Callahan v. Ingram.

## CALLAHAN v. INGRAM, *Appellant.*

### Division One, May 28, 1894.

1. **Slander**: PRIVILEGE: OFFICIAL CONDUCT. A statement made by a member of a city council during a session thereof in reference to the official conduct of the superintendent of streets that he is a "downright thief" is not privileged, if there was no inquiry pending before the house as to the latter's official conduct.

2. ———: ———: QUESTION OF LAW. Whether the occasion was such as to make the statement a privileged one is a question of law for the court, where there is no dispute as to the circumstances under which it was made.

3. ———: INNUENDO. An *innuendo* is intended to define the defamatory meaning which the plaintiff places upon the words used, its office being to give a meaning to language of a doubtful or ambiguous import.

4. ———: ———. Where the defamatory meaning is obvious, as where the words are actionable *per se,* an innuendo is unnecessary.

5. ———: ———. Where the words are actionable *per se* an innuendo limiting their meaning may be disregarded.

6. ———: EXEMPLARY DAMAGES: MALICE. Exemplary damages may be recovered in an action for slander where the malice is implied, as distinguished from actual or express malice.

7. ———: ———: ———: QUESTION FOR JURY. While exemplary damages may always be allowed in suits for slander when the words were maliciously spoken, yet whether they ought to be so given is a matter for the discretion of the jury.

8. ———: ———: ———: INSTRUCTION. An instruction, that the jury may add as exemplary damages such sum as will adequately punish defendant and will prevent other's from doing the like, is erroneous where plaintiff has pleaded and put in evidence facts tending to rebut malice, as this should have been called to the jury's attention in the instruction.

9. ———: ———: EVIDENCE. Evidence of defendant's intent and motive in speaking the actionable words is admissible in mitigation of exemplary damages, but not of the actual damages sustained.

122  355
59a  519
122  355
129  142
64a  471
122  355
133  617
122  355
72a  465
122  355
76a  182
77a  562
73a  278
122  355
f152  278
122  355
d153  214
122  355
87a  632
87a  635
122  355
167  47
167  49
122  355
o174  8494
95a  8651
95a  8652
e99a  1 82
122  355
102a  6615
102a  8693

10. ———: ACTUAL MALICE: EVIDENCE. Defendant may prove, to show want of actual malice, statements of others in regard to plaintiff's official conduct.

11. ———: EVIDENCE. A witness who heard the words spoken can not testify as to what his understanding of them was.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Thompson & Wilcox* for appellant.

(1) The court erred in permitting plaintiff to testify as to statements made to him by different persons concerning the alleged slander. (2) Witnesses may testify as to their understanding of the slanderous language. *Nelson v. Borchenius*, 52 Ill. 236. (3) The court erred in not permitting Lewis Johnson to testify that Callahan had told him that he gave the acceptance to Bashford. The pleadings made that an issue in the case and defendant ought to have been permitted to prove it. (4) The reasons, motives and intentions of defendant on the night in question are material and competent as showing whether he was in the discharge of his duty as a councilman. (5) Defendant's belief in the statements made to him as to plaintiff's official conduct was material to show defendant's good faith in making these statements the basis of his charge against plaintiff. *Hyde v. McCabe*, 100 Mo. 412 at 418. (6) Whether Callahan was guilty of official misconduct and favoritism in issuing the acceptance as he did, was, under the pleadings and evidence, a question of fact for the jury and not of law for the court. (7) Defendant's first instruction should have been given. Plaintiff was permitted to recover, even though

he had been guilty of the misconduct with which he was charged by defendant. (8) If the defendant has the qualified privilege contended for, then the plaintiff could not recover without showing actual malice on the part of defendant. *Hyde v. McCabe*, 100 Mo. 412; *Coffin v. Coffin*, 4 Mass. 1; Cooley on Torts [1 Ed.], p. 214; Newell on Def., S. and L., 418–420; *Klinck v. Colby*, 46 N. Y. 427; *Mayo v. Sample*, 18 Iowa, 306; *Brew v. Hathaway*, 95 Mass. 239; *Fahr v. Hayes*, 13 Atl. Rep. 261; *Swan v. Tappan*, 5 Cushing, 104. (9) Defendant's eighth instruction should have been given. The liability of a member of a legislative body for his remarks made therein depends in no degree whatsoever upon his keeping within the bounds of parliamentary laws. Newell on Defamation, Slander and Libel, 420. (10) The defamatory words must be published while the party still carries on his trade, practices his profession or holds his office. Newell on Defamation, Slander and Libel, pp. 175–177, 853, and cases cited; *Edwards v. Howell*, 10 Ired. (N. C.) L. 211; *Eviston v. Cramer*, 47 Wis. 659; Cooley on Torts [1 Ed.] p. 201, note; Townshend on Slander and Libel [2 Ed.], p. 267, sec. 189. (11) Defendant complains that his tenth instruction, limiting damages to compensation, was refused, and that plaintiff's fourth, authorizing punitive damages, was given. Punitive damages can not be given, unless actual malice is shown or a recklessness akin to it. 3 Sutherland on Damages [1 Ed.], p. 661; *Newman v. Stein*, 75 Mich. 407; *Templeton v. Graves*, 59 Wis. 98; *Eviston v. Cramer*, 57 Wis. 575–76; *Hayner v. Cowden*, 27 Ohio St. 292; *Bennett v. Smith*, 23 Hun, 50; *Barr v. Moore*, 87 Pa. St. 385; *Wilson v. Fitch*, 41 Cal. 386; *Symonds v. Carter*, 32 N. H. 466; *Fulkerson v. Murdock*, 53 Mo. App. 151, and cases cited.

*Harmon Bell* and *Wash Adams* for respondent.

(1) There can be no question but that the words used by the defendant, and on account of which this action was brought, are actionable *per se*, for the reason that they charged the defendant with an indictable offense under the law. R. S. 1889, sections 3732 and 3733; Const. of Mo., art. 2, sec. 12; Newell on Defamation, Libel and Slander, p. 118, sec. 48; Bishop on Non-Contract Law [1 Ed.], sec. 261. (2) Instruction number 1 asked by the defendant was clearly improper, and the court committed no error in refusing to give it. (3) A judgment will not be reversed on account of harmless errors in refence to the admission of testimony. *Young v. Hudson*, 99 Mo. 102; *Sebree v. Paterson*, 92 Mo. 451; Finkelnburg's Mo. App. Practice, pp. 90, 91; *Mitchell v. Bradstreet Co.*, 22 S. W. Rep. 724. (4) The court did not commit an error in refusing to permit the defendant to testify as to his motive or intention in uttering the slanderous words. The rule is that the law imputes to the defendant in such a case the natural and probable consequences of his words, and it is immaterial what meaning the speaker intended to convey. Newell on Defamation, Slander and Libel [1 Ed.], p. 301; 2 Thompson on Trials [1 Ed.], sec. 2029; 13 Am. and Eng. Encyclopedia of Law, pp. 385, 469 and cases cited; *McGinnis v. Knapp & Co.*, 109 Mo. 131. (5.) There was not before the lower house of the common council either a resolution, ordinance or motion affecting the plaintiff in any manner. The defendant's words were purely voluntary,—he went out of his way to assail the plaintiff with falsehoods, and the law affords him no shield of privilege to protect him from the consequences of his act. Cooley on Torts [1 Ed.], p. 214; Bishop on Non-Contract Law, sec. 773, p. 360; *Smith v. Burris,*

106 Mo. 94; *Coffin v. Coffin*, 4 Mass. 1.   (6) The question of privilege, or no privilege is entirely one of law for the judge.   The court should itself decide the question as to whether a communication is privileged and should not submit it to the jury.  Newell on Defamation, Slander and Libel [1 Ed.], pp. 391, 392;  Odgers on Libel and Slander [1 Am. Ed.], sec. 266, p. 234, sec. 185, p. 169; 13 Am. and Eng. Encyclopedia of Law, p. 406; *Ramsey v. Cheek*, 109 N. C. 270. (7) All the authorities agree that, where malice is shown, a qualified privilege is no defense.   Odgers on Libel and Slander [1 Am. Ed.], sec. 267, p. 236; sec. 265, p. 234.   (8) The word maliciously, as used in the first instruction given by the court for plaintiff, has the same meaning as the terms actual malice, or express malice.   Odgers on Libel and Slander, sec. 265, p. 234; Anderson Dict. of Law [1 Ed.], p. 649.   (9) Instructions numbers 1 and 4, given for plaintiff by the court, were clearly correct.   *Hess v. Sparks*, 44 Kan. 465.   (10) Malice in uttering false statements may consist, either in direct intention to injure another, or in reckless disregard of his rights and of the consequences that may result to him.   *Gott v. Pulsifer*, 122 Mass. 235; 13 Am. and Eng. Encyclopedia of Law, p. 425; *Moore v. Stevenson*, 27 Conn. 14; Odgers on Libel and Slander, [1 Am. Ed.]. sec. 270, p. 384.   (11) In the case at bar the court by its instructions required the plaintiff to prove malice on the part of the defendant before the jury could award the plaintiff damages— punitive or otherwise—and this was clearly in defendants favor, as some of the best considered cases have held that, from the speaking of actionable words, malice is implied, which will justify the assessment of exemplary damages.   *Hintz v. Grampner*, 138 Ill. 158; *Bergman v. Jones*, 94 N. Y. 52; *Blocker v. Schoff*, 83 Iowa, 265; *Morrison v. Press Pub. Co.*, 59 Superior Ct.

Rep. 216; 13 Am. and Eng. Encyclopedia of Law, note, page 433. (12) In slander cases the amount of damages to be allowed a plaintiff is peculiarly the province of the jury. 13 Am. and Eng. Encyclopedia of Law, p. 432, citing numerous authorities; *Wilson v. Fitch*, 31 Cal. 386.

MACFARLANE, J.—Action for slander. The petition charged that on the fourth of November, 1889, plaintiff was appointed superintendent of streets of Kansas City, which was an office of honor and trust, under the charter and ordinances of said city. That on said date, at a meeting of the common council of said city, in the presence of divers persons, naming other members of said council, and the clerk thereof, and other persons, then present, defendant "falsely and maliciously spoke and published of and concerning the plaintiff the false and malicious words following, to wit: 'Now, I want to say something, and I want the reporters to get it. The superintendent of streets, this Callahan, is a downright thief, and I can prove it."

The petition further charged that, at the time the words were spoken, there was not then pending before said council any ordinance, motion, resolution or report referring to plaintiff, or the office so held by him. "That defendant meant and intended by the use of said words so spoken and published by defendant as aforesaid to charge plaintiff with being guilty of willful, corrupt and malicious oppression, partiality, misconduct or abuse of authority in his official capacity as such superintendent of streets or under color of his said office. Plaintiff further states that, at the time said words were so spoken by defendant, the defendant well knew the same to be false, and said words were so spoken by defendant wantonly and maliciously, and with the intention of injuring plaintiff;" that the words spoken

were false, and plaintiff was "greatly injured in said office and in his feelings, good name and reputation."

The answer was a general denial, and a special plea, as follows:

"For a second and further answer to plaintiff's amended petition, defendant says that, at the time the supposed defamatory words were spoken by defendant, the lower house of the common council of Kansas City, being regularly in session, were discussing the office of superintendent of streets, and the actions and methods of superintendent Callahan, the plaintiff. It had been stated by different members of the council that he was an inefficient and incompetent officer, and had been guilty of misconduct, oppression, partiality and abuse of authority in his official capacity. During this discussion the defendant, in the discharge of his duty as a member of said common council in discussing the official conduct of plaintiff, stated that the resolution previously introduced by him to investigate the city officials was aimed at superintendent Callahan, that said Callahan, in his official position as inspector of curbing, had condemned curbing that was being put in by one party, and permitted another man, a favorite of said superintendent, to put in the same stone, entailing loss on the first man and bestowing official favors on the second; that he had also given acceptances for curbing put in by one man to another, knowing at the time he gave the acceptances that the person to whom he gave them had not done the work and was not entitled to them, thus enabling the second man to collect pay for work done by the first, and defrauding one man to put money into the pocket of a favorite of said Callahan.

"Defendant, in stigmatizing such conduct as dishonorable and dishonest, applied the term 'downright thief' to said superintendent. Defendant says that this

statement was made in the discharge of his official duty as above set forth, and without malice or ill will to plaintiff, and that he had good reason to believe, and did believe, that the statements he made were true, and that the opprobious epithet he used was a just and fair characterization of such official misconduct.

"Defendant further states that the circumstances above referred to are as follows: In June, 1887, John Henry had a private contract to put in about eighty-two feet of curbing for F. J. Baird on Twentieth street, between Southwest Boulevard and Broadway; that said Henry did said work and put in said curbing and said Callahan, though knowing that said Henry had done said work, issued acceptances to one Bashford; that, in the fall of 1887, Johnson and Thompkins were putting in curbing on Sixteenth street, between Penn and Broadway, and that they got the curbing of Richard Cummins; that said Callahan condemned some of said stone and said Cummins sold it to one Bashford and Callahan allowed him to use it for curbing on another street." The reply was a general denial.

The evidence showed that plaintiff was, on the fourth day of November, 1889, superintendent of streets, and defendant was a member of the city council; that defendant had previously held the office of inspector of curbing and sidewalk construction; that some time previously defendant had introduced in the lower house of the council, of which he was a member, a resolution, bearing on plaintiff's official conduct, which had passed that house and gone to the upper house, where it then remained undisposed of. On this occasion a member raised a question of privilege, and a general discussion and criticism of plaintiff's official conduct followed, in which defendant spoke the words attributed to him, making special reference in what he said to the alleged misconduct set up in his special plea.

At the time no resolution, ordinance, motion or report was before that house respecting plaintiff or his official conduct.

On the trial, defendant offered to prove that those present who heard defendant's language, understood it to refer to official misconduct of plaintiff in the matters referred to. He also offered to prove the reasons and motives which induced him to speak of plaintiff as he did. These offers were refused by the court.

Defendant, in support of his special plea, undertook to prove that, while plaintiff was inspector of curbing, he issued to one party a certificate for curbing put in by another. Under the ordinances the engineer was required, after completion of work, by the owner of the property charged therewith, to grant a certificate of the fact, which, when filed, exonerated the owner from liability to pay for the improvement. Defendant offered in evidence a certificate of that character, which showed that the measurement had been made by plaintiff as inspector, but without designating who had done the work. The court refused to permit this certificate to be read in evidence.

At request of plaintiff, the court gave the jury the following instructions:

"1. The jury are instructed that, if they believe from the evidence, that on November 4, 1889, the plaintiff acting as superintendent of streets of Kansas City, and that defendant Ingram was a member of the common council of Kansas City, and at a meeting of the lower house of the common council, and in the presence of various people, the defendant maliciously used the following language of and concerning the plaintiff in his character of superintendent of streets, namely: 'Now I want to say something and I want the reporters to get it. The superintendent of streets, this Callahan, is a downright thief, and I can prove

it." And if the jury further believe, that said language was false and untrue, then the said jury should find for the plaintiff.

"2. Malice does not consist alone in personal spite or ill will, but it exists in law wherever a wrongful act is intentionally done without just cause or excuse.

"3. The court instructs the jury that the defendant is not protected in this action from liability for the words used by him against plaintiff by reason of having uttered them in the chamber of the lower house of the common council of Kansas City.

"4. The jury are instructed that, in making their verdict, they may take into consideration all the facts and circumstances as detailed by the witnesses, and if the jury find for plaintiff in estimating the damages, which they may think plaintiff has sustained, the jury may take into consideration and allow the plaintiff, for the mortification to his feelings, sufferred from the act of defendant complained of, and may add thereto as punitive damages, such amount as will adequately punish the defendant for such act, and serve as a warning to prevent others from being guilty of a like act."

The court gave one instruction for the defendant as follows:

"11. The jury are instructed that if they believe from the evidence that the remarks of defendant at the council meeting on the fourth of November, 1889, in reference to plaintiff, taken as a whole in their import, referred to him as inspector of curbing and not as superintendent of streets, then your verdict should be for the defendent."

The judgment was for plaintiff for $5,000, and defendant appealed.

I. Defendant admitted speaking the words imputed to him, but undertook to justify what he said on the ground that he was at the time a member of the city

council of Kansas City, which was in regular session, and had under discussion the office of superintendent of streets, and the official action and methods of plaintiff, who was then such superintendent; that in the discharge of his official duty, he had the right and privilege to discuss and characterize the official misconduct of plaintiff.

There can be no doubt, on proper occasion, members of the city council would be protected from "responsibility for whatever is said by them which is pertinent to any inquiry or investigation pending or proposed before them," but no further; they would become "accountable when they wander from the subject in hand to assail others." Cooley on Torts [2 Ed.] *214; Neeb v. Hope, 111 Pa. St. 152.

Members of the city council, in particular, and all citizens in general, are interested in the proper, honest and efficient administration of the public service, and have the right, in the public interest, to criticize public officers, and to prefer charges for malfeasance, or neglect of duty, if done in good faith, upon probable and reasonable grounds, but the law does not permit any person to slander another, on any occasion, or under any circumstances, when they are not protected by absolute privilege.

It is charged in the petition, and conclusively shown by the evidence, that when the objectionable words were spoken, there was no inquiry pending or proposed before that house of the council which would make the occasion one of privilege, beyond that which is accorded to every citizen. Defendant was not privileged to falsely characterize the plaintiff as a "thief," though the term was intended to apply to his official conduct.

Whether the occasion is such as to make the communication one of privilege is always a question of law

for the court, where there is no dispute as to the circumstances under which it was made, and the court did not err in holding that the language applied to defendant was not privileged.    Newell on Defamation, Slander and Libel, p. 391, sec. 9; Odgers on Libel and Slander, p. 183; 13 Am. and Eng. Encyclopedia of Law, 406.    The words spoken were actionable in themselves, and, being admitted by the answer, the court properly instructed the jury that, if they were false, the defendant was liable.

II.    Complaint is made of the first instruction given for plaintiff in that it is an abandonment of the meaning plaintiff, in his petition by innuendo, placed upon the words spoken.    The innuendo charges that defendant intended, and meant, by the language used, to charge plaintiff with oppression and partiality in the discharge of his official duties as superintendent of streets, and the claim is that he should be held to the interpretation he himself placed upon them, while the instruction authorized a recovery on proof of the falsity of the words admittedly spoken.

The innuendo is intended to define the defamatory meaning which the plaintiff places upon the words used.    In case the defamatory meaning is apparent from the language charged there is no necessity for an innuendo at all.    The purpose of the innuendo, and its effect upon the party pleading it, is thus expressed by Townshend in his work on Slander and Libel (Sec. 338):  ''Where language is ambiguous and is as susceptible of a harmless as of an injurious meaning, it is the function of an innuendo to point out *the meaning* which the plaintiff claims to be the true meaning, and the meaning upon which he relies to sustain his action.    This applies, whether the ambiguity be patent or latent, and whether or not there are any facts alleged as inducement.    By this means the defendant is informed of the

precise charge he has to meet, and to deny or justify; but the plaintiff is subjected to the risk that if he claims for the language a meaning which is not the true one, or one which he is unable to make out satisfactorily, he may be defeated on the ground of *variance* or *failure of proof*. For, when the plaintiff, by his innuendo, puts a meaning on the language published, he is bound by it, although that course may destroy his right to maintain the action." To the same effect see Starkie on Slander and Libel [Folkard's Ed.], sec. 446; Newell on Defamation, Slander and Libel, p. 629, sec. 39; Odgers on Libel and Slander, p. 100.

It will be seen that the office of the innuendo is to set a meaning upon words or language which are of doubtful or ambiguous import and taken alone are not actionable, and, it follows, that in case the defamatory meaning is apparent from the words used an innuendo is unnecessary. Its use is only necessary in order to bring out the latent injurious meaning of the words employed. When used for this legitimate and necessary purpose, the plaintiff will be bound to abide by his own construction of the words used. The *innuendo* thus becomes a part of the cause of action stated.

The rule, as given by all the text writers, is different when the words charged are actionable in themselves. In such case the defendant can put in issue the truth of the words spoken, either with or without the alleged meaning. "It will then be for the jury to say from the proofs whether the plaintiff's innuendo is sustained. If not, the plaintiff may fall back upon the words themselves, and urge that, taken in their natural and obvious signification, they are actionable in themselves without the alleged meaning, and that, therefore, his unproved *innuendo* may be rejected as surplusage." Newell on Defamation, Slander and Libel, p. 628, sec. 38; Odgers on Libel and Slander, p. 101, and cases

cited. "An innuendo will not vitiate the proceedings, though new matter be introduced; and where the matter is superfluous, and the cause of action is complete without it, the innuendo may be rejected." Starkie on Slander and Libel [Folkard's Ed.], sec. 447; *Gage v. Shelton*, 3 Rich. (S. C.) 242. "If a complaint is sufficient without the innuendo, the innuendo may be rejected as surplusage; the innuendo may always be rejected when it merely introduces matter not necessary to support the action." Townshend on Slander and Libel, sec. 344, and cases cited; 13 Am. and Eng. Encyclopedia of Law, 468.

The principle announced by these authors is supported by numerous cases cited by them, a case from this court being one. In that case defendant charged plaintiff with being a whore, meaning thereby, that plaintiff "had been guilty of the crime of adultery." The proof disclosed that plaintiff was an unmarried woman. Upon an appeal from a judgment in favor of plaintiff, defendant insisted that, as plaintiff, by innuendo, had declared that defendant's wife intended by speaking the words to impute adultery, plaintiff was bound to prove they were uttered in the sense thus ascribed to them, but the court held that the innuendo could be rejected, and sustained the judgment. *Hudson v. Garner*, 22 Mo. 424.

There can be no doubt that the words "down right thief" applied to plaintiff, imputed to him the crime of larceny, and were in' themselves actionable. The innuendo charging that defendant meant, thereby, to charge plaintiff with official corruption, oppression and partially, also imputed a crime and was actionable. R. S. 1889, secs. 3732 and 3733. Defendant by answer, admitted that he applied to defendant the term "downright thief" as charged. Upon this state of the pleading we do not think there was error in instructing the

jury that plaintiff could recover if defendant spoke the words as charged, and they were false, unless plaintiff was justified in so speaking.

III.   The first instruction required the jury, in order to find for plaintiff, to also find that the defamatory words were spoken with malice.   The second instruction told the jury that malice existed in law "whenever a wrongful act is intentionally done without just cause or excuse."   The fifth instruction authorized the jury in making their verdict, to add thereto, as punitive damages, "such amount as will adequately *punish* the defendant for such act, and serve as a warning to prevent others from being guilty of a like act." Exemplary damages were thus authorized without proof of express malice.   Defendant insists that punitive damages in suits for slander are only recoverable when the wrongdoer was actuated by actual or express malice as distinguished from malice implied by law.

No one is excused for the libel or slander of another for the reason that the wrongdoer was without malice. The actual injury suffered does not depend upon the motive of the wrongdoer   The object, then, in giving evidence in proof of malice is to increase the damages beyond what was actually sustained.   Odgers on Libel and Slander, 269; Townshend on Slander and Libel, sec. 91; 3 Sutherland on Damages, sec. 1205, and cases cited.

In slander, the words are always intentionally spoken, whatever meaning may be imputed to them.   Hence it is said:   "When slanderous words are spoken, or a libelous article is published falsely, the law will affix malice to them.   There is no necessity of proving express malice."   *Buckley v. Knapp*, 48 Mo. 161.   So it is uniformly held that, when the words spoken are actionable in themselves, and are proved to be false, the law will

imply malice. *Hall v. Adkins*, 59 Mo. 144; *Price v. Whitely*, 50 Mo. 439; *Noeninger v. Vogt*, 88 Mo. 589; *Mitchell v. Bradstreet Co.*, 116 Mo. 226. So it will appear that malice, such as the law implies, is the very gist of the action for slander. It is held, in some of the cases last cited, that, when the words spoken are action-able in themselves, the person injured will be entitled to recover without alleging or proving special damages. It is also held that a repetition of the defamatory words may be given in evidence for the purpose of proving express malice (88 Mo. 593), and thereby increasing the damage, though malice was implied from the words spoken.

It is said that "malice, in legal understanding, implies no more than willfulness." *Buckley v. Knapp*, *supra.* Again, malice in law is defined as "the malice which is inferred from doing a wrongful act without lawful justification or excuse." Starkie on Slander and Libel, sec. 336. Townshend says: "The distinction between malice in law and malice in fact has been sup-posed to consist in this, that the one is *inferred* and the other is *proved.* The supposed distinction is unreal and unsound; for, first, there is no distinction between what is inferred and what is proved—*what is, or is sup-posed to be, rightly inferred is proved.*" Townshend on Slander and Libel, p. 68, sec. 87.

We may say, then, that malice whether express or implied means the same, the only difference being in the establishment of it. When malice is implied from the words spoken or published, the burden is on the defendant to prove lawful justification or excuse, or the absence of a malicious intent. On the other hand, if the words themselves do not imply malice, the burden rests upon the plaintiff to establish it. When malice exists, punitive damages may be given, and it can not be seen why a distinction should be made,

when the evil intent existed, whether implied or proved. It is true a distinction is made by some courts, and it is held that, unless express malice is proved, exemplary damages should not be allowed. This line of decision was followed by the St. Louis court of appeals in *Nelson v. Wallace*, 48 Mo. App. 193, and *Fulkerson v. Murdock*, 53 Mo. App, 156.

It is argued that punitive damages are only allowed in trespass, and other actions for torts, when the offense is committed in a wanton, rude and aggravated manner, indicating oppression or a desire to injure, and that no reason can be seen for the application of a different rule in cases for slander or libel. We think the distinction does not in fact exist. Malice is implied in the willful doing of any wrongful act, without justification or excuse whereby injury is done to another, whether it be to his character, his person, or his property; where such act is done maliciously, therefore, the injured person should be entitled to exemplary damages, and it would be immaterial whether malice was implied from the nature of the act itself, or inferred, as a fact, from all the circumstances under which it was committed. The question is, whether the wrong was done willfully and without lawful justification or excuse.

Whatever the decisions of the other states may be, there seems no just ground for distinguishing between malice in fact and malice in law, in respect to the right to exemplary damages, in action for libel and slander, and the decisions of this state make no such distinction. In *Buckley v. Knapp, supra*, an instruction was approved which authorized the recovery of punitive damages, upon implied malice alone, and that decision was followed in the subsequent case of *Clements v. Maloney*, 55 Mo. 359, and the doctrine has, since these decisions, been regarded as settled.

It is said in *Bergmann v. Jones*, 94 N. Y. 62: "The falsity of the libel is sufficient proof of malice to uphold exemplary damages, and plaintiff's right to recover them is in the discretion of the jury. When the falseness of the libel is proved, as a general rule, it is sufficient to warrant the jury in giving exemplary damages." This ruling was approved by the same court in *Warner v. Press Publishing Co.*, 132 N. Y. 183, and expressly followed in *Hintz v. Graupner*, 138 Ill. 158. To the same effect is the case of *Blocker v. Schoff*, 83 Iowa, 269.

IV.    Exemplary damages may always be given in suits for slander when the words are maliciously spoken but, whether such damages should be given, in any case, is a matter within the discretion of the jury. In order to show good faith, and want of malice, the defendant has the right to put in evidence all the circumstances under which the words were uttered, and if such circumstances tend to rebut malice, such damages could only be awarded in case the words were maliciously spoken, but may, in themselves, be sufficient proof, if malice is implied therefrom.

Plaintiff, by innuendo, charged that defendant, by the slanderous words used, intended to impute to him corruption in office. Defendant by answer and in mitigation of damages, admitted that the words spoken had respect solely to plaintiff's official conduct. Defendant offered, as was his right to do, evidence tending to prove the circumstances under which the objectionable words were used in order to prove good faith and want of malicious intent. As has been said, defendant, as an interested citizen, had the right to make reasonable comment and fair criticism upon plaintiff's official conduct, but he had no right to go beyond that and slander him. It was, in view of all the circumstances, for the jury to say how far the evidence mitigated the mal-

ice, if at all, and to award the damages accordingly. We think the effect of the instruction on the measure of damages was to ignore this defense, and, as the question of exemplary damages was a matter independent of the right to recover, the error was not cured by the first instruction, which required a finding that the words were maliciously spoken, in order to a recovery for any amount. Exemplary damages are given by way of punishment, and the jury should be so instructed thereon as to leave no doubt on the subject.

V. There was no error in refusing to permit defendant to testify as to the motives which actuated him in speaking the defamatory words, so far as the testimony affected the right to recover compensatory damages. The effect would be the same, though he meant to say one thing and said another. He is answerable for so inadequately expressing his meaning. Newell on Defamation, Slander and Libel, page 301, section 22; *McGinnis v. Knapp*, 109 Mo. 148.

But the motives or purposes with which the words were spoken, lie at the very foundation of malice. They are the very conditions upon which exemplary or punitive damages are predicated, and no good reason appears why defendant should not be permitted to prove what his motives were.

Odgers says: "In all cases, the absence of malice, though it may not be a bar to the action, may yet have a material effect in reducing the damages. The plaintiff is still entitled to reasonable compensation for the injury he has suffered; but, if the injury was unintentional, or was committed under a sense of duty, or through some honest mistake, clearly no vindictive damages should be given. In every case, therefore, the defendant may, in mitigation of damages, give evidence to show that he acted in good faith and with honesty

of purpose, and not maliciously." Odgers on Libel and Slander, 317.

"Upon principle, the *spirit and intention* of the party publishing a libel are fit to be considered by a jury in estimating the injury done to the plaintiff; and evidence tending to prove it can not be excluded simply because it may disclose another and different cause of action." Starkie on Slander and Libel, sec. 639.

"The intent—meaning the intent to effect certain consequences—with which an act is done is material on the question of the amount of damages; the absence of a bad intent will mitigate the damages; the presence of a bad intent will aggravate them." Townshend on Slander and Libel, sec, 91.

We think evidence of the intention and motive of defendant was admissible for the purpose of mitigating the punishment, by way of exemplary damages; but the jury should have been cautioned not to allow such evidence to operate as a defense to the action, or to mitigate the actual damages sustained.

VI. It does not appear upon the face of the acceptance offered in evidence, that it authorized any particular person to collect the amount due for putting in the curbing, yet delivery to, and possession by, one who had only done a small portion of the work was a circumstance which may have given the holder an advantage, and we think the certificate should have been admitted for what it was worth. The transaction, in which the certificate was issued by plaintiff, was commented upon by defendant, in the discussion in which the slanderous words were used, and defendant had the right to place the whole matter before the jury for the purpose of showing good faith and want of actual malice.

For the same reason, defendant should have been permitted to show what he had been told by others in

reference to this acceptance. *Blocker v. Schoff*, 83 Iowa, 265; *Orth v. Featherly*, 87 Mich. 320.

VII. There was no error in refusing to permit witness Lane to testify as to his understanding of the slanderous words used by defendant. A witness may testify to the speaking of the slanderous words "together with all the attendant circumstances and connections, the existing facts; and, after having done so, it is for the jury to determine from the evidence * * * what was meant." Newell on Defamation, Slander and Libel, page 308, and cases cited in note.

For the errors noted, the judgment is reversed and the cause remanded. BARCLAY, J., absent; the other judges concur.