THE STATE ex rel. WILLIAM HARRIMAN v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, February 2, 1918.

1. **CERTIORARI: Conflict in Opinions: Former Decision of Court of Appeals.** A prior decision rendered by another court of appeals is in no wise binding or pursuasive upon the Supreme Court in de-

termining whether the opinion of the court of appeals in the case in hand is in conflict with its own prior rulings.

2. ———: ———: **Slander: Distinguished from Libel.** There is a well-recognized distinction between libel and slander, in their civil, as well as their criminal aspects. Therefore, in *certiorari* to a court of appeals, based upon a charge that its opinion in a civil action for slander is contrary to previous rulings of the Supreme Court, rulings of the latter court in libel cases are of no concern in determining the question of conflict.

3. ———: ———: ———: **Instruction.** If the spoken words are slanderous *per se* and when taken alone are actionable, an instruction which tells the jury to find for plaintiff if they find defendant spoke said words of and concerning plaintiff in the presence and hearing of others, is not erroneous; but if they are of doubtful and ambiguous import, an innuendo is a necessary part of the petition, and an instruction which fails to require the jury to find they were spoken with the intended meaning and purpose alleged in the innuendo is erroneous.

4. ———: ———: ———: **Ambiguous Words Omitted from Instruction.** The petition charged that defendant, in whose employ plaintiff had formerly been as a manager of a certain printing business, said of plaintiff, "He has robbed me of hundreds of dollars and if you intend to keep a crook in your employ you won't get any more work of mine," meaning thereby "that plaintiff was a thief and had wrongfully taken and stolen money from defendant, and meaning thereby that plaintiff was guilty of the heinous crime of larceny." *Held*, that the words do not charge the felonious taking of the personal property of defendant, from his person, or in his presence, against his will, or by putting him in fear of immediate injury to his person, but they convey the thought of obtaining money by overreaching, or by chicanery or cheating, or by dishonest and fraudulent practices, and cannot therefore be treated as slanderous *per se*, and the innuendo was not surplusage but its allegations necessary, and could not be abandoned in the instructions, and an instruction telling the jury that if they found the defendant spoke the words of and concerning plaintiff they should find for him, omitted a necessary element, and the Court of Appeals did not err in so holding, and its ruling was not contrary to Callahan v. Ingram, 122 Mo. 355.

## Certiorari.

WRIT QUASHED.

*Brownrigg, Mason & Altman, Henderson & Henderson, Vincent McShane* and *John M. Goodwin* for relator.

(1) A simple charge of robbery, unexplained by anything else in the statement complained of, is actionable *per se*. Jones v. Murray, 167 Mo. 25. (2) The above proposition is well settled by numerous other authorities. Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360; Smiddy v. Pearlstein, 201 Mass. 246; Slowman v. Dutton, 10 Bing. 402 (Eng.); Rowcliffe v. Edmonds, 7 M. & W. 12, 4 Jur. 684; Newell on Slander & Libel (3 Ed.), secs. 151-153; 25 Cyc. 286. (3) The Supreme Court has repeatedly held that words which impute or charge the commission of a crime, and especially a felony, are actionable *per se*. Birch v. Benton, 26 Mo. 153; Rammell v. Otis, 60 Mo. 365; Cook v. Pub. Co., 241 Mo. 326; Tilles v. Pub. Co., 241 Mo. 609. (4) The law is well settled in Missouri by controlling decisions of this court that where the slanderous statement itself is actionable *per se*, the plaintiff and the trial court had a right to disregard the inducement and innuendo in submitting the case to the jury. Callahan v. Ingram, 122 Mo. 355; Julian v. Kansas City Star, 209 Mo. 91; Sotham v. Telegram Co., 239 Mo. 606; Rail v. Newspaper Assn., 192 S. W. 129. (5) The publisher of a slander or libel is held to have intended to charge the crime of robbery, when he so states, where at the same time he utters or speaks no further words explaining or qualifying what he said. When such additional words are uttered it is then deemed that the poison carries its antidote. Brown v. Knapp & Co., 213 Mo. 631; Cook v. Globe Ptg. Co., 227 Mo. 537. (6) The secret intention of the publisher of a slander or libel is inadmissible to limit the meaning of the actual words uttered or published. 25 Cyc. 358; Newell on Slander & Libel (3 Ed.), pp. 373-374, sec. 362.

*Charles E. Morrow* for respondents.

(1) The words alleged to have been spoken, taken in their natural and obvious import, do not either in themselves alone or when taken in connection with the inducement pleaded, necessarily charge plaintiff with

the crime of robbery or any other crime, and are not actionable *per se*. (2) At most the words are ambiguous and of doubtful import and do not necessarily carry a defamatory meaning; do not necessarily charge a crime, but may have been meant to charge simply that plaintiff was dishonest. An oral imputation of dishonesty or rascality is not actionable *per se*. Rammel v. Otis, 60 Mo. 365; Jones v. Banner, 172 Mo. App. 137. (3) The language charged to have been spoken being ambiguous and of doubtful import, plaintiff is bound by his innuendos. Callahan v. Ingram, 122 Mo. 355. (4) Even if the decision does conflict in certain particulars with previous decisions of this court, which we deny, yet the judgment is sustained by good reasons in law and should not be quashed. State ex rel. v. Reynolds, 194 S. W. 880. (5) The plaintiff's instruction condemned in the opinion of the Court of Appeals is erroneous for a number of reasons, and the judgment is right. (a) The words alleged to have been spoken do not charge plaintiff with the crime of robbery, and the instruction is erroneous in assuming that the language used does so charge. (b) To say the least, the words charged are ambiguous, and the plaintiff in his innuendos has limited the charge to larceny and dishonesty, and he is bound by the meaning placed upon the language in his innuendos  Callahan v. Ingram, 122 Mo. 355; Crandell v. Greeves, 181 Mo. App. 230; Michael v. Mathies, 77 Mo. App. 556. (c) This instruction correspondingly placed upon the defendant the burden of proving that plaintiff was guilty of the crime of robbery in order to prove the truth of the charge. Patterson v. Evans, 153 Mo. App. 684. (d) It permitted the jury to speculate in their own mind as to what constituted the crime of robbery. Krup v. Corley, 95 Mo. App. 640; Bryce v. Wheeler, 161 Mo. App. 507. (e) It does not define robbery, or inform the jury as to the elements of that crime. Krup v. Corley, 95 Mo. App. 640; Bryce v. Wheeler, 161 Mo. App. 507. (f) The instruction is against the theory on which the case was tried by both parties. It submitted the

issue of the truth of the charges made and at the same time assumed that the language chàrged the crime of robbery, a charge which neither the pleadings nor the evidence justified.

FARIS, J.—This is an original proceeding by *certiorari*, whereby it is sought to bring up for quashal, the opinion and record of the St. Louis Court of Appeals in a cause lately pending in that court, wherein relator William Harriman was respondent, and one T. M. Sayman, was appellant. [Harriman v. Sayman, 193 S. W. 1001.]

The said case of Harriman v. Sayman was an action for slander. Upon a trial thereof in the circuit court of the city of St. Louis plaintiff had judgment for $1500 actual damages, and $3500 punitive damages. From this judgment defendant therein after the conventional motions appealed. Upon a hearing in the St. Louis Court of Appeals, that court in an opinion rendered by Judge BECKER, reversed and remanded the case for a new trial, upon the ground that a certain instruction, which is set out below, was erroneous.

Thereupon the respondent in that case, who is the relator here, after filing his motion for a rehearing, which was overruled, sued out here this writ of *certiorari*, to bring up the record in said cause, upon the ground that the opinion of the St. Louis Court of Appeals contravened certain well-settled rules of law decided by this court, more particularly in the case of Callahan v. Ingram, 122 Mo. 355.

The alleged point of contradiction urged,. together with such other facts as may be necessary to an understanding of the case, will be found in the subjoined opinion.

The gist of the alleged slanderous words as charged and proved in the case of Harriman v. Sayman, supra, was that Sayman, who as stated was the defendant in the slander suit, had said of relator to one Guilbeault he "has robbed me of hundreds of dollars and if you intend to keep a crook in your employ you won't get any more work of mine."

Slander.

This statement was garnished by an indecent and profane reference to relator, which while adding to the luridness of the epithet applied, adds nothing of pertinence to the alleged slander as a matter of law. In the relator's petition filed by him in his action for slander this allegation and innuendo occur:

"That on or about September 6, 1911, plaintiff entered into the employ of defendant as a printer and manager of defendant's printing business, which was conducted under the name of the 'Rush Printing Company;' that under and by virtue of plaintiff's employment as before stated it was his duty to manage, conduct, transact and carry on all of the business of said Rush Printing Company; that on December 13, 1912, plaintiff severed his connection with defendant as aforesaid and ceased to work for defendant in the capacity before mentioned; that at said time, and at all times prior thereto, plaintiff had fully and honestly accounted for and turned over to defendant all money and property of whatsoever kind he had in his possession belonging to said defendant, and plaintiff had fully and efficiently and completely performed all of the duties and all of the services imposed upon him by his contract of employment with defendant. . . .

"That on or about the 3rd day of January, 1913, in St. Louis, Missouri, after plaintiff had left the employ of defendant, defendant, well knowing all of the beforementioned facts, set forth concerning plaintiff, wickedly, designedly and maliciously contriving to injure plaintiff in his good name and standing in his business and occupation, as before defined, and to bring plaintiff into public scandal, infamy and disgrace with all persons, and especially those with whom plaintiff was then connected and associated in the pursuit of his business and occupation, or by whom he would likely become employed and associated with, and with his then employer, in the presence and hearing of Z. Guilbeault and other persons, whose names are unknown to plaintiff, who were then employed by the T. J. George Press Room Company, for whom plaintiff was at the time

working, wilfully, wantonly and maliciously spoke of and concerning plaintiff, and concerning him in his business and occupation, certain false, defamatory and slanderous words, to-wit:

" 'Where is Mr. Harriman (meaning plaintiff)? Are you (meaning Guilbeault) going to let him out, as I told you over the 'phone yesterday? That G-d d-n s-n of a b-h has robbed me (meaning defendant) of hundreds of dollars, and if you intend to keep a crook in your employ you won't get any more work of mine. Put that under your cap,' meaning and referring to plaintiff, and meaning thereby that plaintiff was a thief and had wrongfully taken and stolen money and property from the defendant, and meaning thereby that plaintiff was guilty of the heinous crime of larceny, and meaning thereby that plaintiff was dishonest and lacked credit, integrity and ability in his occupation and business of a printer and other services he performed in connection therewith, and meaning thereby that plaintiff was a dishonorable and dishonest employee and unworthy of being employed by his then employer."

In the trial of the slander suit plaintiff therein asked and the court gave this instruction, to-wit:

"The court instructs you that if you believe from the evidence that the defendant, on or about the 3rd day of January, 1913, in the presence and hearing of Z. Guilbeault, and other persons, maliciously spoke of and concerning the plaintiff, Harriman, the words alleged in the second count of plaintiff's petition, to-wit:

" 'Where is Mr. Harriman; are you going to let him out as I told you over the 'phone yesterday? That G-d d-n s-n of a b-h has robbed me of hundreds of dollars, and if you intend to keep a crook in your employ, you won't get any more work of mine. Put that under your cap' or that enough of the words stated as aforesaid have been proven to have been spoken by the defendant of and concerning the plaintiff to substantially constitute the charge imputed to the plaintiff of having robbed the defendant, and, if you further believe from the evidence that the words spoken were false, then

your verdict should be for the plaintiff on the cause of action set out in the second count of plaintiff's petition.''

, The learned St. Louis Court of Appeals deemed the above instruction erroneous, and because the trial court gave it, the case was reversed. In making this ruling the Court of Appeals in its opinion said this:

''This instruction does not confine the charges imputed to plaintiff to the meaning placed upon them by the innuendo pleaded in the petition, but submits the alleged words to the jury upon the supposition that the said words imputed to plaintiff the crime of robbery. This was error, for, as we have above stated, the alleged slanderous words cannot be held to so charge plaintiff, and the words are not actionable *per se*. The instruction should have submitted the question to the jury to determine whether the alleged slanderous words, or enough of the words alleged, had been proven to have been spoken by defendant of and concerning the plaintiff in the presence and hearing of others, to constitute the charge imputed to the plaintiff by the innuendo pleaded in plaintiff's petition, and the failure to do so we hold is reversible error.''

It is strenuously contended that this ruling of the Court of Appeals is contrary to and out of harmony with what is said in the cases of Jones v. Murray, 167 Mo. 25; Brown v. Knapp & Co., 213 Mo. 1. c. 681; Cook v. Globe Printing Co., 227 Mo. 1. c. 537; Callahan v. Ingram, 122 Mo. 355; Julian v. Kansas City Star Co., 209 Mo. 1. c. 91; Sotham v. Telegram Co., 239 Mo. 607, and Rail v. Natl. Newspaper Assn., 192 S. W. 129.

After a careful examination of these cases we are constrained to say that we do not regard the contention of relator as being well taken. The case of Rail v. Newspaper Association, supra, was decided by the Kansas City Court of Appeals, and not by this court. So that case is in no wise binding or persuasive upon this court in determining whether a Court of Appeals has failed to follow the previous ruling of this court. Moreover, we must assume that if the case of Harriman v. Sayman, be in fact out of harmony with the case of Rail v. News-

paper Association, supra, the learned St. Louis Court of Appeals would of its own volition have certified the Harriman case here pursuant to the provisions of the Constitution in that behalf. All of the above cases which were ruled by us, except that of Callahan v. Ingram, supra, were cases of libel, and not slander cases. There is in almost all jurisdictions a well-recognized distinction between libel and slander, in their civil, as well as in their criminal aspects. Our own criminal statutes, it is persuasive to note, recognize the existing differences in the definitions of these two distinct offenses. [Cf. Secs. 4817 and 4818, R. S. 1909.] So we need concern ourselves only with the rule announced in the Callahan case. If the ruling by the St. Louis Court of Appeals in the case of Harriman v. Sayman, quashal whereof is sought by the instant proceeding, shall be found to contravene the holding in the Callahan case, we ought to quash the record of the Court of Appeals. Let us look alone to this point.

The language spoken of the plaintiff in the Callahan case was: "The superintendent of streets, this Callahan, is a downright thief, and I can prove it." The pleader in his petition in that case, after setting out the slanderous words above quoted, then proceeded to charge by way of innuendo that "defendant meant and intended by the use of said words . . . to charge plaintiff with being guilty of wilful, corrupt and malicious oppression, partiality, misconduct, or abuse of authority in his official capacity as such superintendent of streets or under color of his said office." Judge MacFarlane, who wrote the opinion for this court, said:

"It will be seen that the office of the innuendo is to set a meaning upon words or language which are of doubtful or ambiguous import and taken alone are not actionable, and, it follows, that in case the defamatory meaning is apparent from the words used an innuendo is unnecessary. Its use is only necessary in order to bring out the latent injurious meaning of the words employed. When used for this legitimate and necessary purpose, the plaintiff will be bound to abide by his own

construction of the words used. The innuendo thus becomes a part of the cause of action stated.''

But this court was of the opinion in the Callahan case that the words ''he is a downright thief'' were not ambiguous; that they imputed a charge of larceny and were therefore actionable *per se,* and that in such case, ambiguity being absent the innuendo could be rejected as surplusage. This clearly appears from the opinion, for at pages 367 and 368, of the Callahan case, this court said:

''The rule, as given by all the text-writers, is different when the words charged are actionable in themselves. In such case the defendant can put in issue the truth of the words spoken, either with or without the alleged meaning. 'It will then be for the jury to say from the proofs whether the plaintiff's innuendo is sustained. If not, the plaintiff may fall back upon the words themselves, and urge that, taken in their natural and obvious signification they are actionable in themselves without the alleged meaning, and that, therefore, his unproved innuendo may be rejected as surplusage.' [Newell on Defamation, Slander and Libel, p. 628, sec. 38; Odgers on Libel and Slander, p. 101, and cases cited.] ''An innuendo will not vitiate the proceedings, though new matter be introduced; and where the matter is superfluous, and the cause of action is complete without it, the innuendo may be rejected.' [Starkie on Slander and Libel (Folkard's Ed.), sec. 447; Gage v. Shelton, 3 Rich. (S. C.) 242.] 'If a complaint is sufficient without the innuendo, the innuendo may be rejected as surplusage; the innuendo may always be rejected when it merely introduces matter not necessary to support the action.' [Townshend on Slander and Libel, sec. 344, and cases cited; 13 Am. & Eng. Ency. Law, 468.]''

In the Harriman case, here by the writ of *certiorari* sought to be quashed, the language used was, to say the least of it, ambiguous. For there is a palpable difference between saying of another *''he robbed me''* or *''he is a downright thief,''* and in saying of another *''he has robbed me of hundreds of dollars.''* We are required to

construe words in their plain and usual meaning and significance. It is obvious that so construed, the language used in the Harriman case, and last above quoted, does not necessarily impute the crime of robbery. In other words it does not charge the felonious taking of the personal property of another from his person, or in his presence, and against his will, by violence or by putting him in fear of immediate injury to his person. [Sec. 4530, R. S. 1909.] Rather do the words used in the Harriman case convey the thought of obtaining money by overreaching or by chicanry, or cheating, or by the use of dishonest and fraudulent practices. In such cases we are of the opinion that the innuendo pleaded was proper, and that plaintiff was bound by it. He could not abandon it in his instruction; nor could he treat as slanderous *per se* words which in the setting used did not necessarily impute the crime of robbery, or any other crime, but which *upon the strongest view which* can be be taken of them were susceptible of a reasonable interpretation, which excluded an imputation which was necessarily slanderous, and therefore the words used were ambiguous. This ambiguity was for the jury under proper instructions. It was not within the province of the court *nisi* to assume, and so instruct, that the ambiguous words used meant to charge the felony of robbery, and were therefore actionable *per se*. In so instructing, the learned trial court, as the St. Louis Court of Appeals correctly held, fell into error.

We are constrained to hold that the view taken by the St. Louis Court of Appeals was the only one lawfully to be taken upon the facts held in judgment by them. It follows that our writ of *certiorari* was improvidently granted herein and ought to be quashed. Let this be done.

*Graves, C. J., Walker, Blair* and *Williams, JJ.,* concur; *Bond, J.,* concurs in result; *Woodson, J.,* dissents.