# JOHN J. CONNELL v. A. C. L. HAASE & SONS FISH COMPANY, Appellant.

Division One, December 31, 1923.

1. **LIBEL: Pleading: Charging Crime.** In stating a cause of action for libel, it is not necessary that the words used in the publication, in order to be libelous *per se*, contain all the elements necessary to constitute a crime, or that they would meet the requirements of an indictment or information; they are to be taken in their plain and ordinary meaning, as ordinary persons would naturally understand them upon reading them.

2. ————: ————: ————: **Fake Entry in Book: False Report to Bank: Inducement: Innuendo: Pointing Out Plaintiff.** The petition charged that defendant maliciously wrote a letter to Mattlage containing these false charges: "Referring to Item No. 3 on page 8, this charge $860 was an intentional fake entry of 100 cases of salmon, put in merely to swell the profit account, and the stock taken April 29, 1916, was inflated to an amount exceeding $10,000. In addition to this, a false report was made to the Mechanics-American Bank, and the amount $15,000 was borrowed on this false report. The bank still holds the papers and is ready to show the statement if desired." *Held,* that the words are libelous *per se*, and the petition needed no inducement setting forth the relation which plaintiff bore to the acts mentioned, but (the innuendo stating that the words were used of and concerning plaintiff) stated a cause of

Connell v. Haase & Sons Fish Co.

action. The natural and ordinary conclusion to be drawn from the words is dishonesty, deception, the borrowing of money on a false report, and they fairly import to some person the commission of a felony, the crime defined in Section 3367, Revised Statutes 1919. .

3. ——: ——: ——: Application to Plaintiff: Inducement: Innuendo. If the published words, in their ordinary meaning, import an indictable offense to some one, they need not, in order to constitute libel *per se*, designate the person to whom they refer; nor is it necessary that the petition state extrinsic facts showing the 'application of the defamatory matter to plaintiff, but it is sufficient to state, generally, that such words were published concerning him.

4. ——: ——: ——: Acting Individually or for Company. Where the written words import that some person committed a crime by borrowing money from a bank upon a fake book entry and a false report, it is immaterial, in a libel suit based upon the words, whether such person acted for himself or for a corporation or firm, for under the statute (Sec. 3367, R. S. 1919) it was equally a crime whether the acts mentioned in the writing were performed in his own behalf or the company's. ·

5. ——: Liability of Corporation: Acts of Agent: To Suppress Competition: Sufficient Evidence. The test of the liability of a corporation for libel is whether the libelous words were written and published by its agent while acting within the scope of his employment and in the actual performance of the duties of his principal touching the matter in question. And where the plaintiff had been in the active management of a fish company which was a subsidiary, and in no sense a rival, of the defendant corporation, and when his connection therewith ceased undertook to organize an independent company, and was endeavoring to get one Mattlage of New York to furnish the money for the new corporation, and thereupon the president and manager of the defendant corporation wrote Mattlage that "there is a rumor that you intend backing a certain man who was formerly engaged in the wholesale business here" and that it had occurred to him that "it would be a good thing for you to see a report made" by expert accountants "showing the conditions that prevailed and a number of transactions that occurred while the person in question was in charge" of said subsidiary company, whose stock was owned by the writer and the defendant company; and said Mattlage having expressed a desire to see the report, the defendant company's said president and general manager sent it to him, and wrote a letter in which he stated: "Referring to Item No. 3 on page 8, this charge, $860, was an in-

302 Mo.—4

tentional fake entry of 100 cases of salmon, put in merely to swell the profit account" and that "in addition to this, a false report was made to the Mechanics-American Bank, and the amount $15,000 was borrowed on this false report;" and the evidence tends to show that the writer of this alleged libel was carrying out a definite purpose long held by the defendant corporation, which had long been in the fish business, to prevent the entry of other persons or corporations into the same line of business and the cutting of prices, and that his purpose in writing the letter was to prevent Mattlage from establishing a competing corporation and the plaintiff from engaging in such enterprise, the court cannot rule as a matter of law that there was no evidence tending to show that the writer was not in the actual performance of a duty required of him by the defendant corporation, as its agent, but the question was one for the jury.

6. ———: Justification: False Reports: Proof That Plaintiff Made Them. In a libel suit based on a written charge that plaintiff had made a "fake entry" on the books of a corporation "merely to swell" its profit account and had made a "false report" to a bank and borrowed $15,000 "on this false report," a plea of justification is not established by unquestioned proof that the entry, report and statements to the bank were incorrect and false; it must also be proved that plaintiff made them; and where there is substantial evidence that plaintiff made them, and equally substantial evidence that they were made by the company's secretary, independently of plaintiff's control, the question is one for the jury to determine, and its verdict for plaintiff will not be disturbed on the assigned ground that the plea of justification was established by the evidence.

7. ———: Instruction: Broader Than Petition: Understanding of Reader. Where defendant by its answer put an interpretation on the libelous words alleged in the petition, and put upon them the same interpretation placed thereon by plaintiff in his petition, and thereby excluded every other interpretation inconsistent therewith, he is in no position to complain that an instruction which adopts such interpretation is broader than the petition, or to complain that such instruction did not require a finding that the reader of the lilbelous words understood them in the sense alleged.

8. ———: ———: Probably. The word "probably" used in an instruction telling the jury that if they find for plaintiff in the libel suit they will return a verdict for "such sum as they believe from the evidence will be fair compensation for the injury, if any, naturally and probably done to paintiff by such publication" means "reasonably," and is not error.

Connell v. Haase & Sons Fish Co.

9. ———: ———: **Reference to Plaintiff.** Where defendant by its answer averred that the libelous words "referred" to plaintiff, it cannot complain that the instruction authorized a verdict upon a finding that the words "referred" to plaintiff.

10. ———: ———: **Reliance Upon False Statement: Intent and Purpose.** Words of an instruction requiring the jury to find that the false statement was made "for the purpose of procuring a loan" are equivalent to a requirement that the statement was made "with intent that it be relied upon."

11. ———: ———: **Consistent With Innuendo.** An instruction dealing with the effect of the alleged libel upon plaintiff—to provoke him to wrath, expose him to the loss of public confidence and the like—and embodying the statutory definition of libel, and requiring a finding that the letter containing the libelous words was published and that its tendency and effect were such as is defined in the statute, sufficiently limits plaintiff's right to recover upon proof and a finding that the words had the meaning placed upon them by the innuendo, which charged that they were published concerning plaintiff.

12. ———: ———: **Omission of Justification.** An instruction properly instructing the jury as to its function in determining, as to law and fact, the issue of libel or no libel, and then adding that, if they find the issue of libel in favor of plaintiff, the defense issues pertaining to plaintiff's damages are to be considered and decided in obedience to other instructions pertaining to damages, does not omit the defense of justification, where the issue of justification is submitted under a separate instruction.

13. ———: ———: **Publication: Assumption of Fact.** An instruction telling the jury that "the law presumes that the defendant intended the natural consequences of its acts, and if you find from the evidence that the natural consequences of the publication complained of was to defame and injure plaintiff in his reputation and character or expose him to ridicule or contempt, you may properly infer that such was the intention of defendant, and if you further find and believe from the evidence that the publication complained of was libelous and false you may also infer that it was maliciously made,". was erroneous in carrying throughout the assumption that the defendant published the alleged libel, and was error in a case in which the publication was an essential and hotly-contested issue.

14. ———: ———: **Damages: According to Defendant's Wealth: No Special Damages Pleaded: Inconsistent With Direction for Actual Damages.** The instruction told the jury that, if they found for plaintiff, "then in assessing his damages they may take into

consideration the circumstances of defendant as to wealth and possession of property, so far as these appear from the evidence, and they may render a verdict for such sum as, from the evidence, they think plaintiff ought to receive and the defendant ought to pay, under all the circumstances of the case." The petition did not allege special damages, but asked for $25,000 general damages and the same amount as punitive damages, and the jury returned a verdict for general damages only, in the sum of $18,000. *Held*, that the instruction, after permitting the jury ·to consider the wealth of defendant, authorized them to return a verdict for such sum as they thought the plaintiff ought to receive and the defendant ought to pay and applied this broad warrant of authority to the issues both of actual general and exemplary damages, and on the issue of exemplary damages was inconsistent with other instructions given on the issue of actual damages which limited the jury to "a fair compensation for the injury, if any, naturally and probably done to the plaintiff by said publication," and was error.

15. ———: ———: Justification: Truth of Charge: Confined to Plaintiff Alone. Defendant offered an instruction telling the jury that the truth of the matter published forms a complete defense, and that, although they may find that defendant published the letter maliciously, yet, if they believed from the evidence that the statements in the letter (which charged a "certain man" with making "an intentional fake entry" in a company's book "to swell the profit account" and with having made "a false report" to a bank on which he borrowed $15,000) were true, their verdict must be for defendant; to which the court added the words, "provided you believe from the evidence that plaintiff was the person meant in the letter above referred to." The fake entry and false statements to the bank were made, but there was substantial evidence that they were made by the company's secretary, and not by plaintiff, and there was no evidence that the statements in the letter "referred to" any one else than plaintiff. *Held*, that the modification of the instruction by the court was proper, since it was the duty of defendant to prove, according to its pleaded defense, that plaintiff made the fake entry and false report.

16. ———: ———: Agent's Authority: Within Scope of Employment. The instruction offered by defendant corporation required the jury to find that its agent published the libelous letter while acting as its agent "within the scope of his employment and while in the actual performance of some duty or service required by defendant to be performed by said agent so writing and transmitting said letter." The letter was written by the president and general manager of defendant, for the purpose of forestalling a competi-

tor of defendant. *Held*, that, under the circumstances of the case, the court did not err in substituting for the words quoted the words, "within the scope of his employment, and while in the actual performance of some service in defendant's behalf."

17. ——: ——: **Singling Out Facts.** Instructions which single out certain facts and direct the jury to find for defendant if they find them to be true, thereby omitting other important issues of the case and any direction to consider the evidence tending to sustain them, are properly refused.

18. ——: ——: **Withdrawing Related Charges Severally.** Where the different libelous charges are related and cumulative and each adds to the meaning of the others, instructions which single out each charge and seeks to withdraw them as not severally related, should be refused.

19. ——: ——: **Inconsistent With Defenses.** An instruction which is inconsistent with defendant's plea of justification and the current of the evidence, is properly refused.

20. ——: **Evidence: Memorandum of Bank Officer: Hearsay.** A letter written by defendant's president and general manager, for the purpose of forestalling plaintiff in establishing a corporation to engage in the same line of business in which defendant was engaged, stated that plaintiff, while the general manager of another company, with which he was no longer connected, had made a false report to a bank and had borrowed $15,000 on said false report, and plaintiff bases his suit for libel on those statements, and defendant pleads they were true and made by plaintiff. The statements that had for some years been made to the bank were incorrect and false, but plaintiff claimed they were not made by himself, but by the company's secretary, over whom he had no control. At the trial, plaintiff offered in evidence a memorandum, written and signed and delivered to plaintiff, before the report was discovered to be false, by the credit of the bank, in which were set forth representations of said secretary, "cashier and credit man" of said company, including his connection therewith, his knowledge of its affairs, and its assets, sales and financial condition, the purpose of the offer being to show that said secretary was in charge of the finances of the company and was making representations for the purpose of securing credit for it at the bank, and that plaintiff was not. The memorandum was not sworn to, and the "credit man," who made and signed it, was no longer in the employ of the bank, and was not produced as a witness. *Held*, that the memorandum was hearsay, and its admission was harmful, in view of the issues, and was error.

Connell v. Haase & Sons Fish Co.

21. ———: Abandoned Answers. Abandoned answers are usually admissible in evidence as admissions against interest, and in this case the admission of the answer and three amended answers was not reversible error, although three of them contained no admissions of fact, and although an abandoned pleading is not admissible in every case.

22. ———: ———: Cross-Examination: Impeachment: Collateral Issue. The plaintiff should not be permitted to cross-examine a witness for defendant on a collateral issue, such as, to inquire of the witness, after he had denied that he had extracted money from the company with which both were formerly connected, concerning various other incidents of a similar nature; but plaintiff is bound by such denial. Nor should plaintiff be permitted to testify himself in contradiction and impeachment of the witness upon the collateral issue.

23. ———: Excessive Verdict: $18,000. Plaintiff's libel suit is based on a letter written by defendant to a man who was about to aid plaintiff with money to be used in establishing a company to engage in the salt-fish business in St. Louis. The letter charged plaintiff with the commission of a crime while engaged with a company whose stock was owned by defendant and the writer, who was its president and general manager. The words used in the letter were libelous *per se*, and the purpose of the letter was to prevent plaintiff from organizing a business which would compete with defendant in the same line of business. Plaintiff introduced evidence of a good reputation extending down to the trial. During all his business life he had been engaged in the wholesale salt-fish business, and no other. Knowledge of the contents of the letter appears to have been mainly confined to persons connected with that line of business. Plaintiff alleged no special damages. *Held*, that a verdict for $18,000 actual damages is larger than ordinary in cases in which no special damage is pleaded, but the judgment is not reversed on that ground alone.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED.

*Rassieur, Kammerer & Rassieur* and *Jourdan, Rassieur & Pierce* for appellant.

(1)   The court erred in refusing to sustain the objection to the introduction of any evidence.  (a)  No cause of action was stated; the words counted upon are not libelous *per se* and the petition contains no inducement. Walsh v. Pulitzer, 250 Mo. 142, Ann. Cas. 1914C, 985; Cook v. Pub. Co., 241 Mo. 344; McKim v. Moore, 237 S. W. 773.  (b)  Where the words are not libelous *per se,* Sec. 1263, R. S. 1919, does not obviate the necessity of an inducement.  Cases supra.  (c)  The want of a proper inducement or colloquium cannot be supplied by the *innuendo.*  25 Cyc. 438; Authorities supra.  (d)  The words counted upon are not libelous *per se* as to the plaintiff: 1st, they do not impute a crime; 2nd, they do not tend to provoke plaintiff (or anyone) to wrath or expose him to public hatred; 3rd, plaintiff in nowise is mentioned or referred to in the words.  (e)  The crime of borrowing money (R. S. 1919, sec. 3367) upon a false statement is not charged against or necessarily imputed to plaintiff in the words because: 1st, he is not named, described or mentioned therein; 2nd, it does not appear from the words that the false report was respecting the financial condition or means or ability of the borrower to pay; 3rd, the words do not show that the false report was knowingly made; and 4th, the words do not show that the false report was submitted to the bank with intention on the part of plaintiff that it should be relied upon.  (f) The words themselves to be libelous *per se* as imputing a crime must within themselves contain all elements necessary to constitute a crime.  Krup v. Corley, 95 Mo. App. 640; Christal v. Craig, 80 Mo. 367; Velikanje v. Millichamp, 120 Pac. 876; McKim v. Moore, 237 S. W. 773.  (g)  If the words themselves do not have a libelous meaning, extrinsic facts showing that they do have such a meaning are necessary.  Legg v. Dunleavy, 80 Mo. 558; Ukman v. Daily Record, 189 Mo. 393.  (h)  The petition does not allege that the reader of the letter understood therefrom

that plaintiff was being charged with any of the things set forth in the *innuendo*. Lewis v. Humphries, 64 Mo. App. 466. (2) The court erred in refusing to direct a verdict for the defendant because: (a) The defendant did not publish the letter complained of. There was no evidence showing or tending to show that at the time Haase wrote the letter he was in the actual performance of any duty required of him by defendant as its agent. Fenskey v. Casualty Co., 264 Mo. 154; Washington Gas Light Co. v. Lansden, 172 U. S. 534; So. Exp. Co. v. Fitzner, 59 Miss. 581; Buckeye Cotton Oil Co. v. Sloan, 250 Fed. 712. (b) · The statements set forth in the letter are true. It is the duty of the court to direct a verdict for defendant when the statement alleged to be libelous is true. Phillips v. Pub. Co., 238 S. W. 127. (c) The real meaning of the letter sued upon, in the light of the facts and circumstances, was not libelous *per se*. (d) There was no evidence that Mattlage or anyone understood that the letter charged the plaintiff with having made the fake charge, inflated the stock, or borrowed money on a false statement, and absent this requisite, a verdict should have been directed for the defendant. Byrne v. News Corp., 195 Mo. App. 272; Lemaster v. Ellis, 173 Mo. App. 343; Caruth v. Richeson, 96 Mo. 190. Evidence of witnesses, who read the alleged defamatory charge, where the same is not slanderous *per se*, as to their understanding of the meaning thereof, is admissible. 25 Cyc. 493; Smart v. Blanchard, 42 N. H. 137; Jones v. Banner, 172 Mo. App. 132; Sheppard v. Brewer, 248 Mo. 147. (e) Only a portion of the alleged libel was offered in evidence. Defendant had the right to have the whole of the alleged libel read as a part of plaintiff's case. Newell, Slander & Libel (3 Ed.) p. 378, sec. 368; Smith v. Cas. Co., 190 Mo. App. 452; Hagner v. Pulitzer Pub. Co., 158 S. W. 61. (3) Instruction 2 was erroneous because: (a) The excerpt from the letter sued on set forth in this instruction is not libelous *per se*. (b) This instruction authorized a recovery without a finding of facts which would give the words an actionable meaning. (c) This instruction is

Connell v. Haase & Sons Fish Co.

broader than the pleadings. Harriman v. Sayman, 193 S. W. 1001, 200 S. W. 296; Callahan v. Ingram, 122 Mo. 367. (d) This instruction authorized a recovery without requiring a finding that the reader of the letter understood that defendant had charged the plaintiff, himself, with having done any of the reprehensible things therein mentioned. Byrne v. News Corp., 195 Mo. App. 265; Lemaster v. Ellis, 173 Mo. App. 332; Caruth v. Richeson, 96 Mo. 186. (e) This instruction was error because it authorized a recovery for damages probably sustained by plaintiff. 25 Cyc. 530; Pauchan v. Godeau, 140 Pac. 952; Rolleg v. Lofton, 230 S. W. 330; Partello v. Mo. Pac. Ry. Co., 141 Mo. App. 162. (f) This instruction authorized a verdict upon a mere finding that the words quoted "referred" to plaintiff. (4) Instruction 1 was error for the same reasons assigned against Instruction 2. (5) Instruction 4 was error because it contained no requirement that the jury find that defendant intended to charge that plaintiff had "knowingly made or caused to be made, etc., with intent that it be relied upon," any false statement in writing. (6) Instruction 5 was erroneous in not limiting plaintiff's right to recover upon proof and a finding that the words had the meaning which was placed thereon by the *innuendo* in the petition. Harriman v. Sayman, 193 S. W. 1001, 200 S. W. 296; Callahan v. Ingram, 122 Mo. 367. (7) Instruction 6 was erronous in that it limits the jury to a consideration of whether the letter sued upon was libelous and if libelous the amount of plaintiff's damages. (8) Instruction 8 was erroneous in that it assumed that the defendant published the letter complained of. 25 Cyc. 552. (9) Instruction 10 was erroneous because: (a) It assumed that plaintiff was damaged by the alleged publication. (b) It authorized the jury to bring in a verdict for what plaintiff ought to receive and defendant ought to pay. (c) Matters which are speculative or damages that are remote are not recoverable. 25 Cyc. 530, sec. 2; Thompson v. Powning, 15 Nev. 209; Rowe v. Meyer, 169 N. W. 823; Beeson v. Gossard Co., 167 Ill.

App. 561. (d) It singles out and unduly comments upon one portion of the evidence relating to damages, i. e., the wealth of the defendant. Taylor v. Traction Co., 184 Ill. App. 188; Loftus v. Ill. Coal Co., 181 Ill. App. 197. (10) Instruction 18 was erroneous in that it deprived the defendant of the benefit of the truth as a defense unless the words were found to mean a certain thing. The truth was a defense whatever the words meant. (11) Instruction 22 was erroneous in that it authorized a verdict in behalf of plaintiff upon a finding by the jury that the act of Haase was of service or benefit to the defendant, instead of requiring the jury to find that the act of Haase, in writing the letter, was done by him while in the actual performance of some duty required of him by defendant as its agent. Fenskey v. Cas. Co., 264 Mo. 154. (12) Instructions A, B and C should have been given because each of them submitted the issue of justification in specific form as applied to the evidence. (13) Instruction F should have been given because, if from the evidence the jury should find that it was no part of Haase's duty as the agent of the defendant, to write letters to third persons concerning any person connected with the Proctor-Connell Fish Company, there could have been no liability against defendant in this case. (14) Instructions H, I and J were withdrawal instructions relating to separate portions of the letter sued upon and each of them should have been given for the reasons heretofore stated. (15) Instruction L should have been given because, if Haase only intended to charge that the irregularities mentioned in the letter occurred while Connell was in charge of the Proctor-Connell business and such statement was true, then defendant was entitled to a verdict. (16) It was error to have admitted the second sheet only of the letter sued upon. Newell on Slander & Libel (3 Ed.) p. 378, sec. 368. (17) It was error to allow to be read in evidence the unsworn statement of Switzler, it being hearsay, and the defendant being afforded no right of cross-examination. Hesse v. Mo. Pac. Ry. Co., 40 Mo. App.

206; State v. Sutton, 64 Mo. 107; Pritchard v. Hooker, 114 Mo. App. 605; Gordon v. Burris, 141 Mo. 602; Moore v. Railway, 143 Mo. App. 675; Tate v. Railroad, 159 Mo. App. 475; Howell v. Sherwood, 242 Mo. 513.   (18)   The abandoned pleadings were inadmissible because:   (a) There was no statement of fact in any of them which constituted an admission by defendant against its interests. (b)   The amended answer did not confess the speaking of the words.   Smith Bros. v. Agee, 59 So. 647; Williams v. McKey, 38 S. W. 730.   (19)   The court erred in allowing plaintiff to cross-examine Ellis as to whether or not he wrongfully took or embezzled funds of the Proctor-Connell Fish Company, because it was improper to allow a cross-examination of this witness on immaterial matters merely for the purpose of impeaching him thereon.   (20)   The court erred in allowing plaintiff to impeach Ellis upon immaterial matters because plaintiff was bound by Ellis's answers.   State v. Brassfield, 81 Mo. 151; Taussig v. Shields, 26 Mo. App. 318; Manget v. O'Neil, 51 Mo. App. 35; Scharf v. Grossman, 59 Mo. App. 199; Carden v. Primm, 60 Mo. App. 423; State v. Grant, 144 Mo. 56; State v. Long, 201 Mo. 674; Roe v. Bank, 167 Mo. 426. (21)   The court erred in refusing to order a mistrial or reprimand counsel for reprehensible conduct in court in the presence of the jury, which conduct was conceded to be without justification.   (22)   The court erred in allowing counsel for plaintiff to make prejudicial and improper statements in his opening statement to the jury. (23)   The court erred in allowing counsel for plaintiff to make improper and prejudicial argument to the jury. (24)   The verdict was excessive.   (25)   The verdict is the result of prejudice and passion on the party of the jury.

*Frumberg & Russell, Lyon & Swarts* and *Thomas J. Hoolan* for respondent.

(1)   The publication tended to provoke the plaintiff to wrath, exposed him to public hatred, contempt and

ridicule, deprived him of the benefits of public confidence and charged him with the commission of a felony. It was therefore actionable *per se*. Estes v. Antrobus, 1 Mo. 197; Nelson v. Musgrave, 10 Mo. 648; Moberly v. Preston, 8 Mo. 462; Johnson v. Dicken, 25 Mo. 580; Price v. Whitely, 50 Mo. 439; Johnson v. St. Louis Dispatch Co., 65 Mo. 539; Boogher v. Knapp, 76 Mo. 457; Jones v. Murray, 167 Mo. 25; Lewis v. McDaniel, 82 Mo. 577; Edgar v. McCutcheon, 9 Mo. 768; Minter v. Bradstreet Co., 174 Mo. 444; Cook v. Globe Printing Co., 227 Mo. 471; Julian v. Kansas City Star, 209 Mo. 35; Orchard v. Globe Printing Co., 240 Mo. 575; Sotham v. Tel. Co., 239 Mo. 606; Tilles v. Pulitzer Pub. Co., 241 Mo. 609; State v. Armstrong, 106 Mo. 395; McGinnis v. Knapp, 109 Mo. 131; Link v. Hamlin, 270 Mo. 319; Barber v. St. Louis Dispatch Co., 3 Mo. App. 377; State v. Kountz, 12 Mo. App. 511; Herman v. Bradstreet Co., 19 Mo. App. 277; McMurray v. Martin, 26 Mo. App. 437; Houston v. Woolley, 37 Mo. App. 15; Manget v. O'Neill, 51 Mo. App. 35; Ferguson v. Star Chronicle Pub. Co., 72 Mo. App. 462; Michael v. Mathies, 77 Mo. App. 556; Dobbin v. Ry. Co., 157 Mo. App. 689. (2) If there was any lack of necessary averment in the petition, it was cured by the allegations of the answer. Atteberry v. Powell, 29 Mo. 429; Stivers v. Horne, 62 Mo. 473; Garth v. Caldwell, 72 Mo. 622; Maysville v. Truex, 235 Mo. 619; Davidson v. Land & Imp. Co., 253 Mo. 223; Angel v. Portageville, 168 Mo. App. 16. (3) Appellant cannot complain that instructions on measure of damages were too general, when it made no request for more specific directions to the jury. Browning v. Railroad, 124 Mo. 55; Matthews v. Railroad, 142 Mo. 666; Harmon v. Donohue, 153 Mo. 274; Norris v. Railroad, 239 Mo. 695; State ex rel. v. Reynolds, 257 Mo. 19; Holland v. Railroad, 163 Mo. App. 251; Pope v. Florea, 167 Mo. App. 595. (4) An instruction need not submit to the jury facts about which there is no dispute. Edwards v. Schreiber, 168 Mo. App. 197; Stauffer v. Met. St. Ry. Co., 243 Mo. 305. (5) The jury

were properly instructed on the measure of damages. Wood v. Hilbish, 23 Mo. App. 399; Arnold v. Star Savings Co., 76 Mo. App. 159.

LINDSAY, C.—The plaintiff charged the defendant, a corporation, with writing a letter to one Charles Mattlage and making therein false and libelous statements concerning the plaintiff, to his damage. The petition, after allegation as to defendant's corporate character, charges:

"That on the 30th day of December, 1916, the defendant maliciously contriving and intending to injure the plaintiff in his business, good name and reputation, did falsely, maliciously and wrongfully write a letter to one Charles H. Mattlage, in which said letter defendant stated of and concerning plaintiff the following false and libelous matter, to-wit:

" 'Referring to Item No. 3 on page 8, this charge, $860 was an intentional fake entry of 100 cases of salmon, put in merely to swell the profit account, and the stock taken April 29, 1916, was inflated to an amount exceeding $10,000.

" 'In addition to this, a false report was made to the Mechanics-American·Bank, and the amount $15,000 was borrowed on this false report. The bank still holds the papers and is ready to show the statement if desired.'

"That said reference to Item No. 3, page 8, was to a report by Price-Waterhouse & Co., chartered accountants, to the defendant under date of May 25, 1916, of an audit made of the books of Proctor-Connell Fish Company, which said report had been forwarded by said defendant to said Charles H. Mattlage; and plaintiff states that by the use of the words in reference to said item that the same was 'an intentional entry of 100 cases of salmon, put in merely to swell the profit account,' defendant intended and meant to charge the plaintiff with having made, or caused or permitted to be made, a false and fictitious entry on the books and records of the said Proctor-Connell Fish Company, and by the use

of the said words, 'And the stock taken April 29, 1916, was inflated to an amount exceeding $10,000'—defendant intended and meant to charge the plaintiff with having made, or caused or permitted to be made, false, fraudulent and fictitious entries on the books and records of said Proctor-Connell Fish Company and to charge the plaintiff with dishonesty in business, and with having made, or caused or permitted to be made, false, fraudulent and fictitious entries on the books and records of the said Proctor-Connell Fish Company, for the purpose of cheating, defrauding and deceiving the said Proctor-Connell Fish Company, and its stockholders.

"Plaintiff further states that by the use of words, 'In addition to this a false report was made to the Mechanics-American Bank, and the amount of $15,000 was borrowed on this report', defendant meant and intended to charge that plaintiff had made a false statement in writing to said Mechanics-American Bank of St. Louis, respecting the financial condition and means and ability to pay of the said corporation, Proctor-Connell Fish Company, for the purpose of procuring a loan from said bank, and that he did by means of said false report obtain for said corporation a loan of $15,000, and by reason thereof was guilty of a felony under the laws of the State of Missouri."

Plaintiff secured a verdict for general damages only, in the sum of $18,000.

Defendant objected to the introduction of any testimony upon the ground that the petition did not state a cause of action, in that, it did not allege what plaintiff's occupation or duties were with reference to the Proctor-Connell Fish Company, nor that by reason of any position or connection with that company the contents of the alleged libel were a reflection upon him; that the alleged statement was not libelous *per se*, and no special damages were asked. The objection was overruled, and defendant insists here that the petition is insufficient.

**Imputation of Crime: Libel Per Se.**

The gist of defendant's contention is that the words alleged, standing alone, are not libelous *per se,* as to the plaintiff, because they do not point out him, or any person, do not impute to him the commission of a felony, and are not in themselves such as to provoke him to wrath, or expose him to public hatred or deprive him of the benefits of public confidence, and the like; that therefore it was essential there should have been set forth by way of inducement or preliminary averment, such extrinsic facts as would show that the words alleged did apply to the plaintiff with the meaning expressed in the *innuendo.* Germane to this contention, defendant suggests that if the letter had been read by one who was an utter stranger to the plaintiff, and knew nothing of the Proctor-Connell Fish Company, or of plaintiff's connection with it, such person could have gathered no idea that the plaintiff was being charged therein with the acts set forth. It may be said now, in a preliminary way, that the letter containing the alleged libel was written to Mattlage by Edward T. Haase, who was president and manager of the defendant company, and was signed by Haase individually. The words involved were upon the second sheet or page of said letter. The testimony of Mattlage was that the first sheet was lost, and that he had no recollection of the contents of the lost sheet, and could not remember whether it related to Connell and his dealings with Proctor-Connell Fish Company, or not, but other communications between Mattlage and Haase and other facts showed that Mattlage understood the plaintiff was the person charged with having done, or caused to be done, the acts mentioned, while he, plaintiff, was in charge of the business of Proctor-Connell Fish Company. However, the immediate question is one of pleading, and not of evidence.

Defendant insists that the words are not libelous *per se,* and that, as the petition contains no inducement, no cause of action is stated; and cites Walsh v. Pulitzer Pub. Co., 250 Mo. 142; Cook v. Pub. Co., 241 Mo. 326; McKim v. Moore, 291 Mo. 697. The contention is that

where the words are not libelous *per se,* Section 1263, Revised Statutes 1919, does not obviate the necessity of an inducement, and that the want of a proper inducement cannot be supplied by the *innuendo.* Defendant's contention seems to be that for the words to be libelous *per se,* they must point out plaintiff as the subject of them. It is urged that the words counted upon are not libelous *per se* as to the plaintiff, because (1) they do not impute a crime, (2) do not tend to provoke him to wrath or expose him to public hatred or contempt, or deprive him of the benefits of public confidence, (3) plaintiff is in nowise mentioned or referred to in the words. It is urged that the crime of borrowing money upon a false statement (R. S. 1919, sec. 3367) is not charged against or necessarily imputed to plaintiff in the words. This upon the grounds, that the plaintiff is not named or described therein; that it does not appear from the words the false report was respecting the financial condition or means or ability of the borrower to pay; that the words do not show the false report was knowingly made, or was submitted to the bank with intention on the part of plaintiff that it should be relied upon. Summing these up, the contention is that the words themselves to be libelous *per se,* as imputing a crime, must within themselves contain all the elements necessary to constitute a crime, and must point out the plaintiff as the subject of the words. Do the words impute the commission of a crime? In considering that question it is not necessary to find that the words meet the requirements of an indictment or a formal charge. The words used are to be taken in their plain and ordinary sense, as ordinary persons would naturally understand them upon reading them. [McGinnis v. Knapp, 109 Mo. 140; Diener v. Chronicle Pub. Co., 230 Mo. 613, 627.]

In this case, in the way of imputing the commission of a crime, the words used in the first sentence serve as inducement to the charge made in the second sentence. In the first sentence it said "this charge, $860, was an

intentional fake entry of 100 cases of salmon, put in merely to swell the profit account, and the stock taken April 29, 1916, was inflated to an amount exceeding $10,000.'' The connection shows that the word "fake" was used in its sense as a slang word, that is: "A swindle; a trick; to steal or filch." [Century Dictionary; Midland Pub. Co. v. Trade Journal Co., 108 Mo. App. 231.] The fake entry was put in to *swell* the profit account, the stock taken was *inflated*. The words in their connection imply an intent to deceive, and dishonesty. Immediately follows the statement: "In addition to this, a false report was made to the Mechanics-American Bank, and the amount of $15,000 was borrowed on this false report." A report to a bank upon which money is borrowed, is ordinarily understood to be a statement of assets and liabilities, of the financial condition and means and ability to pay, of the one by whom, or for whom, the report is made. That it was false, in the sense and connection here used, implies more than that the report was merely inaccurate, but implies that it was knowingly and intentionally false. The very purpose of such report is ordinarily understood to be that it shall be relied upon by the bank, so that money may be borrowed upon the strength of the means and financial ability to pay, therein set forth. The false report is charged to have been made in writing: "The bank still holds the papers." The money "$15,000 was borrowed on this false report." The natural and ordinary conclusion from the words used is that the money was procured upon the faith of the false report. Taken together, and in their ordinary and popular sense, the words used fairly import the commission of a felony, the crime defined in Section 3367, Revised Statutes 1919.

Taking the words used in the first sentence, in their meaning as above outlined, there is enough farther to imply that the acts referred to were done in the prosecution of a business involving the making of book entries, and carrying a stock, about which reports or statements of assets and of profits were made. The words used im-

pute falsity and deception in these particulars, and dishonesty in business on the part of the person or persons to whom as committing the acts, the words were applied.

The inquiry reaches the contention that the words were also not actionable *per se,* because, they do not within themselves in any way designate the plaintiff, and there is no averment by way of inducement setting forth the relation which the plaintiff bore to the acts mentioned. The acts described in the words written, were inevitably the acts of some person. The acts so attributed were such as constituted a crime by whomsoever committed, whether in his own behalf, or in behalf of another. "To whomsoever they referred, they charged such party with being guilty of a felony, and indictable offense." [Tilles v. Publishing Co., 241 Mo. 1. c. 632.] In that sense, if false, they were libelous to whomsoever applied. The words describing the crime charged need not within themselves and standing alone, designate the person to whom they refer. Nor, is it necessary that the pleading state "any extrinsic facts, for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, but it shall be sufficient to state, generally, that the same was published or spoken concerning the plaintiff." [Sec. 1263, R. S. 1919.]

In Tilles v. Publishing Co., supra, the words published were as follows: "These men, he said, 'are engaged in the commission of an open felony and the owners of the race track are equally guilty with the bookmakers under the statute. The law must be enforced, and we are going to prosecute everybody who violates it.'

"Meaning thereby that plaintiff and others as the owners of a certain race track, known as the Delmar Race Track, were engaged in the commission of an open felony."

The objection there to the sufficiency of the petition was: "It contains no introductory averments of any matters of fact showing plaintiff's relation to the Delmar Race Track; that is, it contains no allegation

that he was either an owner, a lessee, an operator or managing officer of the corporation owning the race track, or that he was a stockholder in the corporation."

In that case, at page 632, this court after reference to the statute and to the decisions in Curry v. Collins, 37 Mo. 328, and Stieber v. Wensel, 19 Mo. 513, through GRAVES, J., said: "The words charged to have been published in this case are actionable *per se*. To whomsoever they referred, they charged such party with being guilty of a felony, an indictable offense. Under our statute it was not necessary to aver that the plaintiff was owner or manager of the Delmar Race Track, and thus identify him as the party referred to in the language quoted. It is sufficient to aver that the language published, 'was published . . . concerning the plaintiff.' "

In the Tilles Case the crime of felony was imputed, but not to any particular person. The imputation was against anyone in either of two classes of persons, "owners" or "bookmakers." There was no inducement, or averment of the extrinsic fact that there was a Delmar Race Track, or that Tilles was one of the owners, or was in any way interested therein, but the *innuendo* explained that the felony was imputed to him as one of the owners of the Delmar Race Track. The general averment that the words were printed and published concerning him was held sufficient. In the case at bar, the words written import the commission of a crime by some person in the manner and means of borrowing a stated sum from a particular bank. Under Section 3367, it is equally a crime in the person performing the acts mentioned in the writing, whether that person acts in that behalf, for "himself, or any other person, firm or corporation in whom he is interested." The *innuendo* explains that the acts were imputed to plaintiff as done by him upon the books of the Proctor-Connell Fish Company, and as obtaining the money borrowed for that company. A consideration of the cases cited by defendant upon this point does not lead to a different con-

clusion. It was held in each of those cases that the words, spoken or written, did not in themselves import the commission of a crime. It is true it was said in McKim v. Moore, 291 Mo. l. c. 705, that ''it is still necessary that all of the averments required at the common law to show the meaning of the words used must be made and so much of the extrinsic facts as will show their meaning and to whom they are applied, when such person and meaning are not embraced in the imputed words.'' But, this was said in view of the holding that the words there spoken, in themselves, did not import the commission of a criminal offense. There was no sufficient averment that the plaintiff was officially engaged in an examination provided by law of one lawfully subject to the examination, and that the words spoken referred to that examination, and to plaintiff's alleged misconduct therein. Since, unless the special relation existed at the time of the imputed misconduct, the words did not carry the meaning of a criminal offense committed, it was necessary to allege the existence of the relation, both to give meaning to the words, and to show their reference to the plaintiff. The one could not be done without the other. The cases cited, Walsh v. Pulitzer Pub. Co., 250 Mo. 142; Krup v. Corley, 95 Mo. App. 640; Christal v. Craig, 80 Mo. 367; Legg v. Dunleavy, 80 Mo. 558, and Ukman v. Daily Record, 189 Mo. 378, do not go farther, but a discussion of them in turn would unduly prolong this opinion. The holding in the Tilles Case, upon the point in issue, is applicable here. It is also in accord with what was said in Caruth v. Richeson, 96 Mo. 186.

What has been said, is after verdict, upon a petition to which no demurrer was filed, but to which defendant filed five answers. The case was tried upon defendant's fourth amended answer. The first answer was a general denial.

The amended answers, after a general denial, and a special denial that defendant published the alleged

libel, set forth successively, and in cumulative detail,
**Defenses.** certain matters in justification. The fourth
amended answer is much too long to set forth
here. The first paragraph of the second subdivision of
this answer alleged that in May, 1912, there was entered
upon the books of Proctor-Connell Fish Company an
item as for 100 cases of salmon sold to the Union Pacific
dining car department at $2.15 per dozen, amounting to
$860, whereby it was made to appear that the item of
$860 was an asset of said Proctor-Connell Fish Company,
which was carried on the books, and included thereafter
in the annual statement; that no such order for such
quantity of goods was ever received from said dining
car department, nor such goods ever shipped; that plain-
tiff, during all of the time involved, was treasurer and
chief manager in control of the business of said Proctor-
Connell Fish Company, and said false and fictitious entry
was made or caused or permitted to be made by him, to
swell the profit account, and the charge that the said
entry was a fake entry, intentionally made, was in fact
true.

The next paragraph alleged that about April 29,
1916, the stock of the Proctor-Connell Fish Company
was taken for the purpose of showing to the stockholders
and others interested, the goods on hand and their value;
that under the direction and supervision of plaintiff said
inventory and statement of values was falsely inflated
in the sum of $10,000, over the actual or fair value, and
the charge that the stock taken on said date was inflated
in excess of $10,000 was true. The next paragraph
alleged that from the year 1910, to June, 1916, and prior
to 1910, said Proctor-Connell Fish Company did its bank-
ing business with the Mechanics-American National
Bank of St. Louis, and it was the custom and require-
ment of said bank to have said company submit state-
ments of its financial condition, and statements were
made; and said bank made loans to said company upon
the faith of such statements, and alleged the making of
statements annually and the procuring of loans and ex-
tensions of loans in the period mentioned; and alleged

a statement made February 2, 1916; that at said time the aggregate sum of $16,000 was borrowed from said bank, upon and by reason of said statement, which was false, in that it, and other statements, did not contain a true account of the resources and liabilities of said company; that said statements were prepared and submitted under the direction and supervision of plaintiff, and by him, or some employee of said company at the instance of plaintiff, and that the alleged statement, "In addition to this, false report was made to the Mechanics-American Bank and the amount $15,000 was borrowed on this report," was true. The third subdivision pleads the making of these untrue statements by plaintiff to said bank, on certain designated dates, in each of the years 1910 to 1916, inclusive and also in each of said years making or causing to be made to R. G. Dun and Co. and the Bradstreet Commercial Agency, incorrect and false statements; and charges the making in said years to said Edward T. Haase, a stockholder in Proctor-Connell Fish Company, false inventories and statements. By the fourth subdivision the defendant, denying that it published the alleged libel, reaverred the matters alleged in subdivisions two and three, in mitigation of damages.

The reply denied all new matter set up in the answer.

A brief outline of preceding events, and of the relation to each other of the companies and persons mentioned, is necessary. In the year 1902, and for some years prior thereto, there were in St. Louis, engaged in the wholesale salt-fish business, the Trask Fish Company, and the defendant Haase & Sons Fish Company. The plaintiff had been for a period of years an employee of Trask Fish Company. In 1902 that company went out of business, and upon its cessation, Proctor-Connell Fish Company was incorporated, with a capital stock of $10,000. The plaintiff, and one Proctor, and one other man, all of whom had been employed by the Trask Company, went to work for the new company. In the incorporation of the Proctor-Connell

Facts of Case.

Fish Company, Proctor and Connell each appears to have subscribed for one-fourth of the stock, but their actual ownership of any interest in the company does not clearly appear. The certificates issued to each of them for twenty-four shares were assigned in blank, and were pasted back in the stock book of the company. Each one received a certificate for one other share of stock, but each of these also carried a signed memorandum showing that the holder held the share for the sole use and benefit of Edward T. Haase. There can be no serious doubt upon the evidence that at all times the stock of the Proctor-Connell Fish Company was owned by Edward T. Haase, and by the Haase & Sons Fish Company or its shareholders.

Edward T. Haase was secretary of the Haase & Sons Fish Company in 1902, and some years later became its president and general manager, and was such until his death on May 13, 1917.

The alleged libel was written about December 30, 1916. There can be no serious doubt from the evidence, and from the nature of the statements made here on appeal, that Proctor-Connell Fish Company was not organized as a rival to Haase & Sons Fish Company, and was in reality a subsidiary to the latter company. They did not compete, or enter the same territory. Plaintiff had charge of the buying and selling for the Proctor-Connell Fish Company. His charge and control beyond that is one of the matters in dispute, as is his responsibility for the alleged false entries and statements. Proctor was president, but worked as a salesman only. At some time about the beginning of the year 1916, Proctor appears to have made demand through an attorney for the privilege of examining the books of Proctor-Connell Fish Company, and Connell at first denied to him access to the books. Immediately after that, and it appears as a result of differences, Edward T. Haase procured Price-Waterhouse & Co., public accountants, to make an examination of the books. This was begun May 16, 1916, and took as a basis, or

starting point of investigation, the inventory and annual statement of Proctor-Connell Fish Company, as of the date of April 29, 1916, certified by plaintiff as treasurer, and by one Ellis, who was the bookkeeper and also secretary of the company. Ellis remained afterward in the employment of the Proctor-Connell Fish Company, and of the Haase Company, but following, and as a result of this examination, and the report made by the accountants, Connell's connection with the company ceased. Afterward the business went under the name of "Proctor-Connell Branch" of the Haase Fish Company.

After Connell's connection with Proctor-Connell Fish Company was severed, he cast about for employment, or more particularly financial backing in the formation of a new company to engage in the wholesale salt-fish business in St. Louis. He entered into negotiation with Charles H. Mattlage of New York, who was interested in that business, with the purpose of engaging Mattlage, and also another man, in the enterprise of incorporating a company to be located in St. Louis, and to enter that business. While this was in progress, and before this enterprise was set on foot, on December 20, 1916, Edward T. Haase wrote to Mattlage. This and all other letters were written upon stationery of the defendant. It is as follows:

"Dear Sir:

"There is a rumor that you intend backing a certain man, who was formerly engaged in the wholesale fish business here.

"It occurs to me that it would be a good thing for you to see a report made by Price-Waterhouse & Co. (expert accountants), showing the conditions that prevailed and a number of transactions that occurred while the person in question was in charge, and am quite sure that if you know the circumstances you would be somewhat cautious and require a bond on any investment you contemplate in this direction. I will candidly say that my action is not prompted entirely out of considera-

tion for you, and that to a certain extent it is due to self-interest, which is no doubt obvious.

"If you would like to see this report drop me a line, or wire and will be pleased to accommodate you."

Mattlage wrote in answer, the following letter, addressed to Haase & Sons Fish Company:

"Yours of the 20th inst. at hand and very much pleased to hear from you, also would like a report from Price-Waterhouse & Company."

In reply Edward T. Haase wrote to Mattlage as follows:

"Your letter of the 23rd was received and I now enclose the report of Price-Waterhouse & Co: Kindly return at your convenience.

"If the person in question should re-enter the fish business here, it would simply mean a period of price cutting to the advantage of no one."

Charles H. Mattlage testified that he received the report of Price-Waterhouse & Co. mentioned in the letter. Three days later, another letter was written by Edward T. Haase to Mattlage, and in the second page of this is contained the alleged libel. As has been already stated, Mattlage testified that the first page was lost, that he did not remember the contents of the first page, nor whether it "related to Mr. Connell and his dealings with Proctor-Connell Fish Company." The second page, containing the alleged libel, in addition to, and following the words set out in the petition, contains the following sentence: "When you get to St. Louis, call and will give you all the facts personally."

On January 4, 1917, a letter was written by Mattlage & Sons addressed to "A. C. L. Haase & Sons Co.," saying: "Your letters of the 27th and 30th ulto at hand with report from Price-Waterhouse & Company which we have examined."

After that, on January 11, 1917, Mattlage & Sons wrote a letter addressed to "E. T. Haase, care A. C. L. Haase & Sons Co.," in which they said: "Your several letters have influenced us more or less in not going into

business in your city. We had fully made up our minds to do so, but we took your good judgment of conditions under consideration. Please consider what we say strictly confidential.''

On January 13, 1917, Edward T. Haase wrote to Mattlage, in acknowledgment of the foregoing, the following:

''Your letter of the 11th received and as requested will be considered strictly confidential.

''It seems that the person in question, in some manner learned that I had written you on the subject, as I heard from a friend of mine that he had shown a copy of my letter to several persons here in the city. Kindly advise me on the subject so that I will know conditions. I feel perfectly justified in what I have done in this matter, but naturally would like to know the exact situation.''

Pending the negotiation between Connell and Mattlage, the latter came to St. Louis to confer with Connell. At this time an attorney was engaged to prepare papers for incorporating the new company, to be known as ''J. F. Connell Fish Company.'' Upon the day he received the first communication from Haase, Mattlage also, on that day, December 23, 1916, wrote to this attorney, Montague Lyon, the following:

''Enclosed please find letter from A. C. L. Haase & Sons Fish Company, and apparently he is much disturbed in what we intend doing. However, we have answered his letter and asked him for that report, although we have seen one.

''We know what arrangements we have made, and as we have put Mr. Connell under bond, things no doubt will come through in the proper manner.''

Mattlage appears to have followed this up by advising Lyon, or sending to him the other communication concerning the matter. Lyon was attorney for Connell and also looking after the interests of Mattlage. Mattlage abandoned his purpose, and the project went no further than some arrangement made for a building

in which to carry on business, and the shipment of some fish to St. Louis by Mattlage. It appears that Connell, after some fruitless efforts to obtain employment in that line of business, went to New York, in 1918, and was there employed by Mattlage as a salesman, and some of the Mattlage employees having gone into the army he was engaged in that employment at the time of the trial.

A great mass of evidence, oral and documentary, was introduced concerning the entry of the item of $860, the transactions with the bank, the annual statements, the manner of keeping the books and the control of the business of Proctor-Connell Fish Company. The phases of this evidence must be considered in connection with the errors assigned, of which there are many.

There was a demurrer offered at the close of the case, and it is insisted that the court should have directed a verdict for the defendant. Under this contention it is urged that the defendant did not publish **Demurrer to Evidence.** the letter complained of; that there is no evidence showing or tending to show that at the time Haase wrote the letter he was in the actual performance of any duty required of him by defendant. The decisions in Fensky v. Casualty Co., 264 Mo. 154; Washington Gas Light Co. v. Lansden, 172 U. S. 534; Southern Express Co. v. Fitzner, 59 Miss. 581, and Buckeye Cotton Oil Co. v. Sloan, 250 Fed. 712, are cited. An approved rule applicable to corporations in cases of this kind is stated in 5 Fletcher, Cyclopedia of Corporations, page 5243: "The test (of liability) is whether the slanderous words were spoken by the agent of the company while acting within the scope of his employment and in the actual performance of the duties of his principal touching the matter in question." In this case the evidence tends to show that Edward T. Haase in writing the alleged libel and the letters which preceded and followed it, was carrying out a definite purpose long held by the defendant corporation. The A. C. L. Haase & Sons Fish Company had been and was largely a family concern. The policy was to prevent, as far as possible,

the entry of other persons or companies into the same line of business in St. Louis, and the trade territory held by the company, and to prevent the cutting of prices. The incorporation, ownership and management of Proctor-Connell Fish Company, in the guise of an independent company, had that purpose. It is admitted that Edward T. Haase owned 32 per cent of the $400,000 of capital stock of the Haase Company. He was its president and the active manager of its affairs. His letters show that his purpose was to prevent the entry of a company which would be a competitor with the Haase Company for business. Clearly, the purpose was to prevent Mattlage from entering upon such an enterprise. His plan was to discredit Connell, and hold out the threat of cutting prices. There is certainly evidence tending to show that his acts in that regard were done by him as and for his company, and in accordance with a policy authorized and followed by his company in the accomplishment of that purpose, and "touching that question." The trial court could not have held as a matter of law that there was no evidence tending to show that Edward T. Haase when he wrote the letter, was not in the actual performance of a duty required of him by the defendant as its agent. It was a question for the jury.

It is said that the statements set forth in the letter are true, and therefore it was the duty of the court to direct a verdict for defendant. Phillips v. Pub. Co., 238 S. W. 127, is cited. In that case the plaintiff admitted that he had been employed by one or more insurance companies. That fact, stated or suggested in the alleged libelous publication, was the essential or determinative fact in testing the question of the truthfulness of the statement, which as a whole, was alleged to be libelous, and in that case there was a verdict for the defendant. In the case at bar there is no room for serious doubt that the entry of $860 for 100 cases of salmon was an improper entry. There is no room for doubt that statements were made to the bank which were

false.   The statement referred to in the letter of Haase
to Mattlage was a false statement.   Others had been
also.   Annual statments were made to Edward T. Haase.
These were not true statements.   These statements dif-
fered widely from the statements made to the bank
covering like periods.   None of them, it appears, was a
true statement.   The plaintiff has the following admis-
sion in his statement of the case on appeal:

"The evidence of the expert accountants is negligi-
ble, although more than voluminous, because there is no
doubt but that the books were crookedly kept, and that
crooked and false statements were made to the bank."

The plaintiff in his printed argument further states:
"The real question in the evidence in this case, and it
is the only question, is not so much whether crooked
things were done, as it is whether Connell or Ellis did
them."

The defendant admits there is dispute as to whether
Connell had knowledge of the falsity of the entry of
$860, but urges that Connell had charge of the selling,
and the entry was carried on the books for four years
and that Connell was in general charge.   On this, and
other matters, plaintiff endeavored to fix responsibility
upon Ellis, as having kept the books, made up state-
ments and having charge of the financial affairs, and
defendant sought to put the responsibility upon Connell
as being the person in general charge of the business,
and having, as treasurer, signed the notes given to the
bank, signed the earlier statements made to the bank,
and done other things characteristic of management.
Ellis went to work for the company in 1906.   He suc-
ceeded a man named Bender, who had kept the books
of the company for several years.   Bender had been
employed for that place by Edward T. Haase.   When
Bender left he recommended Ellis.   Ellis says he was
engaged by Connell.   Connell denies this.   Two or three
years before the alleged libel was written Ellis became
secretary.   He says Connell, and not the board of direc-
tors, made him secretary.   The statement made to the

bank for the period ending December 31, 1915, was signed by Ellis as secretary. This was the last statement rendered before the writing of the alleged libel. Ellis also signed the statement to the bank for the period ending December 31, 1914, and for both periods just mentioned the statements to the commercial agencies were signed by Ellis as secretary. Statements for the years 1913, 1912, 1911 were signed by Connell as treasurer. Connell's testimony is that Ellis prepared these from the books, of which he, Connell had no charge or knowledge. The testimony of Ellis, in effect, is that the books were kept, and statements made, and items in the statements prepared changed, according to what Connell told him to do. Connell as treasurer signed the checks, and as treasurer signed the notes to the bank. Ellis took the notes to the bank. Connell is not shown to have visited the bank more than one time. There is testimony tending to show that Ellis did the negotiating with the bank as to the loans, that he passed on the credits, had charge of orders, attended to the banking and general things that came up about the office.

The testimony is that Connell did the buying and the selling, and had charge of the salesmen on the road and in the city. He priced the stock for the inventory taken in April, 1916, but testifies that he had nothing to do with taking the stock; that the list was furnished to him some days later, and he fixed the prices, or values. He testifies that the stock was taken or listed by a man brought over from the Haase Company. He testifies his pricing then done took into account rise in prices incident to the war in Europe. Ellis testifies that in preceding years Connell had withheld invoices of goods purchased, so that the items were not on the books at the time of making inventories and statements; that thereby, while the goods themselves were included in the inventory, the cost price charged did not appear against the company, on the books, or in the statements made. Connell testifies that his attention was called to the fact that Ellis in handling the funds of the company had with-

held about $450, and that he took it up with Ellis, and
Ellis procured a note for the amount to be signed by his
father, which was indorsed by the company through Con-
nell to the bank, replacing the money withheld.  Among
other things shown as evidence of Connell's control, it
was shown that he made or permitted loans of the money
of the company to be made to two of the salesmen.  The
parties made the question of responsibility for false
entries and false statements, made as by one in charge
of the business, a crucial issue of fact in the case.  The
case is in a situation wherein it must be accepted as a
fact that the things charged in the alleged libel as hav-
ing been done, were done.

Edward T. Haase in his communications to Mattlage,
so far as the record discloses, did not name any person,
but he pointed out Connell by reference as the subject
of his communication.  He used an impersonal form of
expression in connection with the things charged as done.
They were done while the person referred to was in
charge of the business.  The reference to the person in
charge was to Connell, and no other.  The letters so
show.  The evidence otherwise shows this, because Con-
nell had been discharged, but Ellis had been retained
after the audit of Price-Waterhouse & Co. was made,
and had charge of the ''Proctor-Connell Branch'' of the
Haase Company at the time of the trial.  The language
used would not ordinarily be understood as imputing
mere irregularities, or negligence on the part of the
person in charge, but rather fraud, and false represen-
tations.  The justification then involved not only a show-
ing that the improper acts were committed (and the evi-
dence shows this), but also that they were done, or caused
to be done, by Connell or under his direction while he
was in charge of the business to which the acts pertained.
On the other hand the effort of plaintiff was to show
that these things were done by Ellis.  Thus, Ellis testi-
fied that in May, 1912, Connell gave him a slip contain-
ing the item of 100 cases of salmon as sold to the Union
Pacific, and told him to enter and ''run it through the

books.'' Connell testified that he knew nothing of this item until four years later. Ellis testifies that in making inventories, after a list of goods on hand was made and prices extended, Connell took Ellis into the private office, changed the numbers or quantity, as substituting 200 barrels of mackerel in place of 100 barrels of the same, and other like changes, and had him, Ellis, extend the totals according to the changes made. Ellis testifies that the inventory as of December, 31, 1915, was thus raised approximately $10,000. Connell denied making such changes, or having Ellis make any. There is an equally wide variance in their testimony as to making up statements for the bank, Ellis testifying that Connell was responsible for the inflated figures which went into those statements, and Connell testifying that Ellis made up the statements from the books, brought them to him, and he signed those made prior to 1914, as treasurer, because the bank required such statements to be signed by some officer, and that he had nothing to do with the books. Upon the whole record it is clear that Proctor-Connell Fish Company's business was a department of the business of Haase & Sons Fish Company, and in ultimate fact both Connell and Ellis were working for the latter company. They received salaries from the ostensibly independent Proctor-Connell Company. It was evidently contemplated that this company should make its own showing, for credit with the bank, and the commercial agencies. Upon the issue whether Connell was in charge of its business, and in respect of the matters alleged, the finding of the jury was adverse to the defendant. Under the peculiar situation disclosed and the contradictory evidence it cannot be declared here as a matter of law that the various things done, and alleged in the answer to have been done, by Connell, or knowingly caused or permitted to be done by him as in charge of the business, were in fact so done, caused or permitted by him.

Defendant insists there was no evidence that Mattlage or anyone understood the letter charged the

plaintiff with having done the things enumerated and therefore a verdict should have been directed for defendant. Under the letters written by Mattlage, and the other evidence as to the results produced upon him, this contention cannot be allowed. Mattlage knew from Haase's first letter that Connell was the person referred to. That letter was preparatory to what was to follow. The Price-Waterhouse report mentioned Connell. Mattlage understood Haase's letter to mean the "assets and liabilities had been falsified." He was "disturbed" and "influenced" by Haase's letters, so that he decided not to back Connell. He testified it "was Haase's letter, not the report," which decided him. It is urged a verdict should have been directed for defendant because only a portion of the alleged libel was read, and that defendant had the right to have the whole read. Defendant had that right if the whole was in existence, but the evidence was that the first page was lost. The contents of the lost page became the proper subject of inquiry upon oral examination of Mattlage or anyone who had read the first page. His testimony on direct examination was that he could not remember the contents of the first page. The plaintiff could not be held to show what the witness could not remember, nor in that situation was plaintiff under the burden of showing that there were no words on the first page, which carried an antidote to the poison on the second page.

Defendant complains of instructions numbered 1 and 2 given for plaintiff, and assigns the same reasons against each of them. Instruction 1 is as follows:

Instructions 1 and 2.

"The court instructs the jury that if they believe from the evidence that on the 30th day of December, 1916, the defendant published of and concerning plaintiff the letter to Charles H. Mattlage, as stated in plaintiff's petition, and as introduced in evidence, and that in said letter the following was contained:

" 'In addition to this, a false report was made to the Mechanics-American Bank, and the amount, $15,000,

302 Mo.—6

was borrowed on this false report. The bank still holds the papers and is ready to show the statement if desired;'

"And if the jury further find from the evidence that said quotation from said letter is libelous and false, and referred to plaintiff, then the jury shall return a verdict herein for the plaintiff in such sum as they believe from the evidence and under the instruction will be fair compensation for the injury, if any, naturally and probably done to the plaintiff by said publication."

Instruction 2 in the same terms sets forth the second sentence of the alleged libel.

The first objection is that the excerpts from the letter are not libelous *per se*. This contention has been considered.

It is next urged that the instruction authorized a verdict without a finding of facts which would give the words an actionable meaning; that it is broader than than the pleadings, and that it authorized a recovery without requiring a finding that the reader of the letter understood that defendant had charged plaintiff, himself, with having done any of the reprehensible things therein mentioned. The rulings in Harriman v. Sayman, 193 S. W. 1001; State ex rel. Harriman v. Reynolds, 200 S. W. 296; Callahan v. Ingram, 122 Mo. 355; Byrne v. News Corp., 195 Mo. App. 265; Lemaster v. Ellis, 173 Mo. App. 332, and Caruth v. Richeson, 96 Mo. 186, are cited.

Actionable
Meaning
of Words.

The defendant by its amended answer broadened the issue tendered by the petition. The defendant, averring that the entry was false and fictitious, and the stock taken inflated beyond its actual or fair value, alleged that the false and fictitious entries, and the false weights, quantities, and values, were made or reported by the plaintiff himself, or were made under and by his direction.

Defendant, averring that the statements made to the bank were false, alleges that they were made by plaintiff himself, or by his direction, he knowing them to be false.

What one causes to be done, under his direction, by
another, he does himself. The defendant thus put an
interpretation on · the words, which included the inter-
pretation placed upon them by plaintiff, and excluded
any other interpretation inconsistent therewith. There
was no allegation, and no evidence tending to show,
mere negligence on the part of plaintiff in respect of any
of the matters charged. Having thus inter-
Probably    preted the words, and affirmed their truth-
Means
Reasonably. fulness as applicable to plaintiff, with the very
meaning plaintiff put upon them, it does not
appear how defendant can now avail itself of the objec-
tions stated. Error is urged in that the instruction
"authorized a recovery of damages *probably* sustained
by plaintiff." This meant damages that reasonably
might be found to have resulted, or probably, as "hav-
ing more evidence for than against." [Webster's Dic-
tionary; Bain v. State, 74 Ala. 38; Bailey v. Centerville,
108 Ia. 20; Gallamore v. City of Olympia, 34 Wash. 379;
State v. Trosper, 41 Mont. 442; Ex parte Heacock, 8 Cal.
App. 420.]

It is also urged that the instruction authorized a
verdict upon a mere finding that the words quoted
"referred" to plaintiff. The language of the instruction
Referred to.  well might have been more definite; but, de-
fendant by its pleading "referred" the words
to plaintiff, asserting their truthfulness in their sense of
imputing wrongdoing, directly, or through another, and
not mere negligence; and the instruction required a
finding that the words were false and libelous. This as-
signment is ruled against the defendant.

Complaint is made of Instruction 4, of which it is
said, it contained no requirement that the jury find that
defendant intended to charge that plaintiff had "know-
ingly made or caused to be made, etc., with intent that
it be relied upon," "any false statement in writing."
The instruction is not subject to this objection. It con-
tains an equivalent requirement. It contains the require-
ment that the jury find that defendant intended to charge

"that plaintiff had made a false statement in writing to the Mechanics-American National Bank of St. Louis, respecting the financial means and ability to pay of the Proctor-Connell Fish Company, for the purpose of procuring a loan from said bank," for said company, and did so procure said loan. If the false statement was made "for the purpose of procuring a loan," then, inevitably, it was made with intent that the statement be relied upon.

Complaint is lodged against Instruction 5 in that it did not limit "plaintiff's right to recover upon proof and a finding that the words had the meaning which was placed thereon by the *innuendo* in the petition." Harriman v. Sayman, 193 S. W. 1001, and 200 S. W. 296, and Callahan v. Ingram, 122 Mo. 355, are cited. Those cases are not applicable to the point raised upon this instruction. The instruction dealt with the effect of the alleged libel upon plaintiff—to provoke him to wrath, expose him to loss of public confidence, and the like. It embodied the statutory definition of libel, and required a finding that the letter was published, and that its tendency or effect was such as is defined by the statute as a basis of right of action. It did not deal primarily with the question of the meaning of the words used, but with their tendency or effect upon the plaintiff. The instruction was not, as to the meaning of the letter, inconsistent with the meaning placed by the *innuendo,* as in the cases cited.

*Consistent With Innuendo.*

Complaint is made of Instruction 6. It is said that it limits the jury to a consideration of whether the letter sued upon was libelous and if libelous the amount of plaintiff's damages, and that it leaves out of consideration the defense of justification. The issue of justification was submitted under a separate instruction. Instruction 6 properly instructed the jury as to its function in determining as of law and fact, the issue of libel or no libel, and then, that if the jury found the issue of libel in favor of plaintiff the defense issues pertaining to plaintiff's damages were to be

*Omitting Justification.*

considered and decided in obedience to the court's instructions referring to damages. It does not bear the construction placed upon it by defendant.

Complaint is made of Instruction 8. It is as follows:

"The court instructs the jury that the law presumes that the defendant intended the natural consequences of its acts and if the jury find from the evidence that the natural consequences of the publication complained of was to defame and injure plaintiff in his reputation and character or expose him to ridicule or contempt, the jury may properly infer that such was the intention of the defendant and if you further find and believe from the evidence that the publication complained of was libelous and false, you may also infer that it was maliciously made."

Assumption of Fact.

This instruction is subject to objection. The question whether the defendant corporation published the writing was a vital question. The instruction is based upon an assumption that the defendant published the alleged libel. That was an essential issue all through the case, and the instruction as given was erroneous in carrying all through it, that assumption.

Complaint is made of Instruction 10, which is as follows:

"The court instructs the jury that if they find their verdict herein for the plaintiff, then in assessing his damages, they may take into consideration the circumstances of the defendant as to wealth and possession of property, so far as these appear from the evidence, and they may render a verdict for such sum as, from the evidence, they think the plaintiff ought to receive and the defendant ought to pay, under all the circumstances of the case."

Wealth of Defendant.

It is to be observed that plaintiff did not plead special damages. He asked for $25,000 general damages sustained, and for the same amount as punitive damages. The instruction, after permitting considera-

tion by the jury of the wealth of the defendant, author-
ized a verdict for such sum as they thought "the plain-
tiff ought to receive and the defendant ought to pay."
It applied this broad warrant of authority to both the
issue as to the actual general damages sustained by the
plaintiff, and to the issue of exemplary damages, if any
were to be allowed. On that subject it was inconsistent
with instructions numbered 1 and 2, in that, upon actual
damages, it in no way limited the jury to "a fair com-
pensation for the injury, if any, naturally and probably
done to the plaintiff by said publication."

　　Defendant also complains of Instruction 18, as modi-
fied by the court. As that instruction was offered by de-
fendant it told the jury that the truth of the matter
published forms a complete defense, and that though
they found defendant published the letter maliciously
for the purpose of keeping a competitor
Truth of Libelous
Words: As Applied
to Anyone.
out of business, yet if they believed
from the evidence that the statements
in the letter were true, their verdict
must be for defendant. To this, the court added the
words, "provided you believe from the evidence that
plaintiff was the person meant and spoken of in the letter
and the portions of the letter above referred to." De-
fendant objects to the modification, urging that it "de-
prived defendant of the defense of the truth if the letter
referred to somebody else and not to the plaintiff." But,
defendant pleaded the truthfulness of the statements as
applied to plaintiff, and to no other person. There was
no evidence that the statements in the letter "referred
to" anyone else than the plaintiff. There is no claim
by defendant that they referred to Ellis. Defendant en-
deavored to justify by trying to show that plaintiff was
the party guilty of doing the things mentioned. Plain-
tiff sought to show the falsity of the statement by show-
ing that it was Ellis, and not plaintiff, who was the guilty
party. The objection loses sight of the distinction be-
tween the question of falsity of the charge as to what
was done, and the falsity of the charge as to the person

who did what was done.  The *addendum* by the court confined the issue of justification to· a consideration of the plaintiff alone, because defendant asserted the truthfullness of the statements as applied to the plaintiff. The instruction properly held the defendant upon the two grounds chosen by defendant in justification, that is, that the certain acts of misconduct had actually been committed, and that plaintiff had committed them.

Defendant also complains of Instruction 22 wherein the court modified an instruction as offered by defendant. The instruction as offered by the defendant advised the jury in effect that before the defendant could be found **Agent's Authority.** liable the jury must find that defendant's agent published the letter while he was acting as its agent "within the scope of his employment and while in the actual performance of some duty or service required by the defendant to be performed by said agent so writing and transmitting said letter." For the words in the quotation, the court substituted the words, "within the scope of his employment, and while · in the actual performance of some service in defendant's behalf."  The argument is, that the principal has the right to fix the agent's authority; that he may not be forced to have one as an agent and be bound by his acts merely because the agent's act will be of service to him. And it is said: "It was a service or of some service and benefit to this defendant to forestall a competitor, but that does not make Haase its agent."

In Fensky v. Casualty Co., 264 Mo. 1. c. 167, the grounds of liability are stated as follows: "The things to be looked to are, (1) was the person an authorized agent of the corporation? and (2) if so, was he acting within the scope of his employment, when he used the slanderous language? and (3) was such language used in the actual performance of his duties, and touching the matter in question?  If so, then the corporation is liable, whether such authorized agent be high or low in class (so he was duly authorized and was acting within the scope of his authority) and is liable, to again quote from Judge

Thompson, 'though the slander was not uttered with the knowledge of the corporation or with its approval, and though it did not ratify the act of the agent.' '' Measured by this, the instruction as given is not so lacking in definite character of requirement as alone constitutes error. Without dispute, Edward T. Haase, the writer of the letter, was president and general manager of the defendant company, and hence the scope of his employment was general. The nature of the service undertaken by him, the forestalling of a competitor of defendant, is clearly disclosed in the letters written by him. The letter forming the basis of this action beyond dispute was "touching that question." He employed two means toward the desired end, the persuasive one of a clearly implied threat of a cut in the prices of salt fish, and the statement to discredit Connell with Mattlage. In the relation in which he stood, it was not necessary to find that the defendant corporation knew or approved of what Edward T. Haase wrote.

The defendant complains of the refusal of the court to give its requested Instructions A, B and C. Instruction A told the jury that if it found certain facts concerning the transaction with the bank, as, that if false statements were made, and the money was borrowed upon the faith of the statements, the plaintiff was not entitled to recover. The instruction was properly refused, because it singled out the acts imputed, but left out of consideration the question that the doing of the acts was imputed to plaintiff or to any person. Instructions B and C respectively referred in the same manner to the book entry concerning the 100 cases of jack salmon and the inflation of the stock to an amount exceeding $10,000, and were properly refused.

*Singling Out Facts.*

Defendant also offered its Instruction F, which told the jury that if they found it was no part of the duty of Edward T. Haase as president and general manager of defendant company to write letters to any person concerning

*Purpose of Libelous Words.*

the manner in which the books of Proctor-Connell Fish Company were kept, or its business conducted, or concerning the conduct of any agent of that company, the verdict should be for defendant. The instruction left out of consideration the purpose or any purpose for which such letters might have been written.

Withdrawing Related Changes.

Instructions H, I and J were refused. Each of these singled out a portion of the alleged libelous letter ("H" singled out the portion as to the salmon item) and sought to withdraw these portions as not severally being actionable charges. These were properly refused, because the charges were related, and were cumulative. Each added meaning to the others.

Defendant also urges as error the refusal of Instruction L. This instruction told the jury that if the statements of acts made in the letter were true, then, even though the jury might find plaintiff had no knowledge of them and they were done by another, this sufficiently established the truth of the matters stated, if "Haase only intended to charge that the irregularities mentioned happened while plaintiff was in charge of the business of Proctor-Connell Fish Company." This instruction is not consistent in character with defendant's plea of justification, nor with the theory and current of the evidence offered. The acts charged in the letter are of a character more grave than mere irregularities, and the answer charges knowledge on the part of plaintiff, and the case was tried on that theory.

Inconsistent With Defenses and Evidence.

Some errors assigned upon the admission of evidence remain. Over the objection of defendant the court permitted plaintiff to read to the jury a signed but unsworn statement or memorandum, made by Switzler, dated September 28, 1912. On the date mentioned, Switzler was credit man for the Mechanics-American National Bank. This memorandum purports to give a statement of representations made to Switzler by "Mr. Ellis, cashier and credit

Evidence: Bank Memorandum.

man of the Proctor-Connell Fish Company." It sets
forth at considerable length the representations as made
by Ellis, as to his connection with said company, and
his knowledge of its affairs, and includes figures given
as to the assets, sales and financial condition of the com-
pany. Its tendency was to show that Ellis was the man
in charge of the finances, was acquainted with them, and
was making representations for credit with the bank,
and negatively at least, that Connell was not. Switzler
had left the employment of the bank, and was not pro-
duced as a witness. It cannot be called harmless, as the
issue in the case was joined. It was hearsay evidence,
and its admission was error. [Hess v. Mo. Pac. Ry. Co.,
40 Mo. App. 202; State v. Sutton, 64 Mo. 107; Pritchard
v. Hooker, 114 Mo. App. 605; Gordon v. Burris, 141
Mo. 602.]

Error is assigned in that the court permitted the
four answers of defendant, previously filed, to be intro-
duced in evidence. The answer was a general denial.
The second and third amended answers were substantial-
ly of the character of the fourth amended answer, though
not so extensive. The first amended answer,
after a general denial, pleaded that if de-
fendant's agent wrote the letter, the matters
and things complained of were true, and fur-
ther that if said letter was so written, it was written in
good faith, without malice, "and under an honest sense
of duty and desire to fulfil a moral and social duty in a
matter in which defendant and the party written to, as
merchants, were interested," and "in the interest of
society." As a general rule this court has held that the
admission in evidence of the abandoned pleadings of a
party was not error. [Dowzelot v. Rawlings, 58 Mo.
75; Anderson v. McPike, 86 Mo. 293.] This, generally,
upon the theory that the pleading contained some admis-
sion of fact against interest. But, this has not been so
in every case. [Walser v. Wear, 141 Mo. 443.] The
answer, and second and third amended answers contain
no admissions of fact. The first amended answer varies

*Abandoned Answers as Evidence.*

from the others in its expression of altruistic motive in writing the letter. The fourth amended answer, upon which the case was tried, in addition to elaborating the charges made in the second and third amended answers, added charges of false statements made to the commercial agencies. Under the general course of holding in this State upon this point, the admission of these answers in evidence is not regarded as reversible error.

Defendant complains that the court permitted plaintiff, on cross-examination, to ask Ellis if he did not at various times take funds, money of the Proctor-Connell Fish Company without the knowledge or consent of its officers, and upon his denial that he had done so, permitted plaintiff to inquire as to various incidents of that nature, and permitted plaintiff himself to testify in contradiction and impeachment of Ellis upon that point. The question was a collateral one, and not material to the issues, and plaintiff should therefore have been bound by the answer made. However, Connell, in his counter-testimony, went no small way toward placing himself in dealing with Ellis, as to charges of moneys abstracted, in the position of a person in charge of the affairs of the company. He testified that on one occasion he said to Ellis: "Well, this is the second time and I don't see that we can longer keep you here;" and further, that he told Ellis he would report his conduct to the Haase & Sons Fish Co., and that he did report it.

*Cross-Examination.*

There are errors assigned upon the grounds of misconduct of counsel for plaintiff, in the character of statements made in opening the case, and in the manner of examining witnesses, and in making statements in argument to the jury not supported by any evidence. Some of these are not without merit, but this opinion has already reached too great length to justify taking them up in detail. They can be regulated upon re-trial.

*Misconduct of Counsel.*

The defendant also insists that the verdict is excessive, and is the result of passion and prejudice on the

**Excessive Verdict.** part of the jury. The plaintiff introduced evidence of a good reputation extending down to the time of the trial. During all his business life he had been connected with the wholesale salt-fish business, and no other. Knowledge of the contents of the letter appears to have been mainly confined to persons connected with that line of business. It can at least be said that the verdict is larger than the ordinary, in a case where no special damages were pleaded.

The judgment should be reversed, and the cause remanded. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur.